W. LUNSFORD CREW AND JOSEPH N. HATEM, INDIVIDUALLY AND ON BEHALF OF THEMSELVES AND OTHER MEMBERS OF FIRST FEDERAL SAVINGS & LOAN ASSOCIATION OF ROANOKE RAPIDS, PLAINTIFFS V. CARL S. THOMPSON AND FIRST FEDERAL SAVINGS AND LOAN ASSOCIATION OF ROANOKE RAPIDS, DEFENDANTS.

(Filed 4 February, 1966.)

**1. Actions § 3—**

An action instituted by directors, apprehensive that they would lose their offices in the election at the annual meeting, to preclude the counting of alleged invalid proxies, and alleging that the secretary refused to permit them to inspect the books to ascertain the number of votes to which the various stockholders were entitled, *held* properly dismissed as moot when it appears from an amended complaint filed after the stockholders' meeting that plaintiffs were reelected directors and that the right to inspect the books had been granted under court order.

**2. Reference § 2—**

It is not contemplated that a referee may be appointed to attend an annual meeting of members of a building and loan association and there make determinations relating to the respective rights of the contesting parties during the progress of such meeting.

**3. Same—**

No order of reference should be entered until the pleadings have been filed and issues raised.

**4. Pleadings § 2—**

The complaint and the amended or supplemental complaint will be construed together, and allegations in the amended or supplemental complaint supercede those in the original complaint to the extent of any conflict.

APPEAL by plaintiffs from *Bundy, J.,* May 1965 Session of HALIFAX.

On January 19, 1965, the date this action was instituted, Judge Bundy signed an *ex parte* order restraining defendant Association, pending further orders of the court, "from holding its annual meeting of members called for at 2 P.M., Wednesday, January 20, 1965, at its office in Roanoke Rapids, North Carolina." The order recites

it was entered on motion of plaintiffs, supported by affidavit of W. Lunsford Crew. Neither the motion nor the affidavit is in the record.

An order dated February 9, 1965, signed by Judge Bundy, recites it was entered pursuant to a hearing on February 4, 1965, on return of the order to show cause why the temporary restraining order of January 19, 1965, should not be continued in effect until the final hearing. Apart from said order, nothing in the record indicates what transpired at said hearing on February 4, 1965.

The order of February 9, 1965, in substance, provided: It ordered the directors to issue a call for the annual meeting of the members of defendant Association (hereafter Association) to be held February 23, 1965, at a specified time and place. It appointed William H. Watson, Esq., as Referee, and ordered that the said Referee "consider, determine and rule upon the validity of all proxies, revocations thereof, and the right of any member, as of December 31, 1964, to vote at the annual meeting." It ordered that the proceedings before the Referee "shall be deemed a trial in accordance with the provisions of Article 20 of Chapter 1 of the General Statutes of North Carolina"; and that the Referee deliver a report of his actions and rulings to the Clerk of the Superior Court of Halifax County on or before March 8, 1965. It ordered that the Association "furnish a list of the members, including their address, entitled to vote in the annual meeting originally called for January 20, 1965, together with the number of votes which each member is entitled to cast in the 1965 annual meeting, not later than noon on Tuesday, February 9, 1965." It allowed plaintiffs to and including February 24, 1965, to file their complaint, and allowed defendants thirty days thereafter to file answer(s).

Plaintiffs filed their complaint on February 23, 1965, the date fixed by court order for the annual meeting of members, alleging therein in substance, except when quoted, the facts stated below.

The Association was organized under and by virtue of the act of Congress codified as Section 1464, Title 12, of the United States Code. The management of its business is vested in its officers and directors. The directors are elected at each annual meeting of the members. Each director receives a fee of $10.00 for his services in attending regular meetings of the board. The officers are elected by the directors. The secretary had caused to be published a notice of the annual meeting of members.

Plaintiffs are members and directors of the Association and have served continuously as directors since its organization in 1951. Defendant Thompson, "at the time of the commencement of this action," was a member, director and president of the Association.

There are on file with the Association approximately 61 paper

writings bearing signatures of members. These purported proxies are illegal and void for the following reasons: Twenty-eight were not filed with the secretary of the Association five days or more prior to January 20, 1965. Others were out of date. Others were made to "Official Proxy Committee" without naming the individuals who constituted such a committee. Others were "obtained by false representation." Others were executed by fiduciaries in violation of their trusts and contrary to law. (Note: The complaint does not refer to any specific proxy or name any member who signed a proxy.)

Defendant Thompson intends to use the illegal and void proxies to advance his own interest at "undue expense" and loss to the Association and its members. These proxies, solicited or controlled by defendant Thompson, "are, or might be, a decisive factor in the outcome of the annual meeting of the membership of said Association." If defendant Thompson is permitted to vote these proxies, W. Lunsford Crew and Joseph N. Hatem "will suffer irreparable damage by reason of their being wrongfully deprived of their offices as Directors."

The secretary of the Association, acting under the domination of defendant Thompson, "refused to allow plaintiffs and other members of said Association to inspect and make copies of the records . . . showing the number of votes to which the members . . . are entitled and minutes of the previous meetings of the Board of Directors, *until required to do so by Order of Court.*" (Our italics.)

Plaintiffs prayed: (1) that defendants be restrained from using illegal proxies; (2) that the Association, its officers and agents, be required to permit plaintiffs to inspect the Association's said records; and (3) that plaintiffs be awarded such other and further relief, etc.

On March 24, 1965, plaintiffs filed a paper entitled "Amended Complaint," in which they alleged:

"17. That since the commencement of this action an annual meeting of the members of defendant Association was held in the City of Roanoke Rapids, North Carolina, on the 23rd day of February, 1965, pursuant to an order of . . . Bundy, Judge . . .; that at said annual meeting certain votes were cast by members in person and certain votes were cast for said directors by proxies.

"18. That it will be for the best interest of the parties to this action and the members of defendant Association that a full, final and complete determination of the results of the annual meeting . . . held on February 23, 1965, be judicially declared and determined.

"19. That at said annual meeting . . . W. Lunsford Crew, Joseph N. Hatem and Graham Shell received the highest number of votes cast for the three vacancies on the Board of Directors and were, therefore, duly elected directors of defendant Association.

"20. *That prior to the commencement of this action* the Secretary of defendant Association, James A. Rainey, refused to allow plaintiff W. Lunsford Crew to inspect proxies filed with said Association and refused to allow the said plaintiff to inspect minutes of meetings of the Directors of said Association; that since the commencement of this action and the entry of a restraining order herein, to wit: *from January 19, 1965, to January 27, 1965,* said Secretary continued to deny to plaintiff W. Lunsford Crew access to said minutes, and other records. (Our italics.)

"21. That, except as herein amended, the plaintiffs ratify and affirm their complaint.

"WHEREFORE, the plaintiffs renew the prayer of their complaint and further pray:

"4. That the order of reference heretofore entered in this action be enlarged to direct the Referee to answer issues and report to the Court the following:

"(a) The number of legal votes received for each nominee for the offices of Directors of . . . (the) Association . . . at its annual meeting of members held on February 23, 1965.

"(b) Who are the persons elected to be Directors of . . . (the) Association . . . at said meeting?

"(c) Did the defendant Association or any officer or agent thereof refuse to allow the plaintiff W. Lunsford Crew to examine minutes of meetings of the Directors of said Association, proxies, and other records of said Association as alleged in the Complaint and Amended Complaint?

"5. That the costs of this action be taxed against the defendants."

Defendants filed separate demurrers to the complaint. In each, two grounds for demurrer were asserted: (1) that the complaint does not allege facts sufficient to constitute a cause of action, and (2) that the court has no jurisdiction over a civil action "arising out of the internal operations of a Federal Savings and Loan Association, created and existing under the laws of the United States and an instrumentality thereof, the exclusive jurisdiction of such matters being by act of Congress placed in the Federal Home Loan Bank Board, to the exclusion of this court."

Judge Bundy, by order dated May 25, 1965, sustained both demurrers on both grounds and dismissed the action. Plaintiffs excepted and appealed.

*Banzet & Banzet for plaintiff appellants.*

*Allsbrook, Benton & Knott and Dwight L. Cranford for Carl S. Thompson, defendant appellee.*

*Battle, Winslow, Merrell, Scott & Wiley for First Federal Savings and Loan Association of Roanoke Rapids, defendant appellee.*

BOBBITT, J.   When plaintiffs instituted this action on January 19, 1965, one day before the time originally fixed for the annual meeting of the members of the Association, they apprehended they might be deprived of their offices as directors by adverse votes cast under the purported authority of illegal and void proxies. This appears clearly from the portion of the complaint filed February 23, 1965. It appears with equal clarity from the supplemental portion of the complaint filed March 24, 1965, that plaintiffs W. Lunsford Crew and Joseph N. Hatem (and also Graham Shell) were duly elected directors of the Association at the annual meeting of its members held February 23, 1965; and there is no allegation or contention that defendants controvert or challenge plaintiffs' election or present status as directors of the Association.

Thus, it appears affirmatively from plaintiffs' pleading that illegal votes, if any, cast under purported authority of illegal and void proxies, if any, did not affect materially plaintiffs' election as directors.

The agreed statement of case on appeal includes the following: "The Referee filed his report on April 30, 1965, but did not pass upon the right of members to vote; he concluded as a matter of law that he did not have jurisdiction over the determination of whether any member had a right to vote." The referee was well advised. When appointed as referee in the order of February 9, 1965, no complaint had been filed. G.S. Chapter 1, Article 20, relates to trials by referees on evidence offered by litigants. It is not contemplated that a referee be appointed to attend a meeting such as the annual meeting of the members of the Association and there make determinations relating to the respective rights of contesting parties during the progress of such meeting. "No order of reference, either by consent or otherwise, should be permitted by the court until the pleadings are in and the parties are at issue." *Lumber Co. v. McPherson,* 133 N.C. 287, 291, 45 S.E. 577; *Kerr v. Hicks,* 131 N.C. 90, 92, 42 S.E. 532; *Perry v. Doub,* 249 N.C. 322, 326, 106 S.E. 2d 582; McIntosh, North Carolina Practice and Procedure, § 526. The provision in the order of February 9, 1965, appointing the referee was improvidently entered; and plaintiffs' contention that the referee should be required to file a further report as to what occurred at said meeting of February 23, 1965, is without merit.

CREW *v.* THOMPSON.

Allegations in the portion of the complaint filed on February 23, 1965, are to the effect the secretary of the Association, acting under the domination of defendant Thompson, refused to allow plaintiffs and other members of the Association to inspect and make copies of the records of the Association showing the number of votes to which the members were entitled and minutes of the previous meetings of the board of directors, *until required to do so by the court's order of February 9, 1965.* The only reasonable inference to be drawn from plaintiffs' pleading is that the Association furnished to plaintiffs all data required by the court's order of February 9, 1965.

Obviously, allegations in the supplemental portion of the complaint filed March 24, 1965, supersede, to the extent in conflict therewith, allegations in the portion of the complaint filed February 23, 1965. The annual meeting of February 23, 1965, was held between the filing of the first portion and the filing of the second portion of plaintiffs' pleading.

In passing upon the demurrers, consideration must be given to both portions of plaintiffs' pleading. It is our opinion, and we so hold, that the facts alleged in the supplemental portion filed March 24, 1965, disclose affirmatively that plaintiffs have no cause of action against defendants on account of matters alleged in the portion of the complaint filed February 23, 1965.

If plaintiffs are or become aggrieved on account of events occurring subsequent to said meeting of February 23, 1965, such grievance may be the subject of another action or proceeding. The present action relates to plaintiffs' alleged grievances as of the commencement of this action. Plaintiffs' pleading discloses their original grievances are now moot on account of the action of the members of the Association at the annual meeting on February 23, 1965.

Assuming, without deciding, the North Carolina courts had jurisdiction of plaintiffs' action, the conclusion reached is that both demurrers were properly sustained on the ground the (composite) complaint does not state facts sufficient to constitute a cause of action, and that the action was properly dismissed.

In view of the conclusion reached, we express no opinion as to defendants' contention that the act of Congress under which the Association was organized places exclusive jurisdiction of matters such as are involved in this action in the Federal Home Loan Bank Board. As to this, there is a division of authority. Decisions indicating the Federal Home Loan Bank Board has exclusive original jurisdiction include: *People, etc. v. Coast Federal Sav. & Loan Ass'n,* 98 F. Supp. 311; *Woodard v. Broadway Federal Savings & Loan Ass'n,* 244 P. 2d 467; *Reich v. Webb,* 32 Cal. Rptr. 803; *Home Loan Bank Board v. Mallonee,* 196 F. 2d 336, *cert. den.* 345 U.S. 952,

*rehearing den.* 345 U.S. 978. Decisions indicating courts (state or federal) have jurisdiction in certain respects include: *In re Election of Directors, etc.,* 51 N.Y.S. 2d 816; *Elwert v. Pacific First Federal Savings & Loan Ass'n,* 138 F. Supp. 395; *Pearson v. First Federal Savings and Loan Ass'n,* 149 So. 2d 891; *Daurelle v. Traders Federal Savings & Loan Ass'n,* 104 S.E. 2d 320.

Suffice to say, a complete development of the facts concerning the Association's charter, bylaws, federal regulations, if any, etc., would seem a prerequisite to a satisfactory consideration of the jurisdictional question.

Affirmed.