STATE OF NORTH CAROLINA, EX REL. UTILITIES COMMISSION v. SOUTHERN BELL TELEPHONE AND TELEGRAPH COMPANY

No. 84

(Filed 29 January 1976)

Appeal and Error § 9— appeal from Utilities Commission order — subsequent order while appeal pending — appeal moot

    Defendant's appeal from the decision of the Court of Appeals affirming an order of the Utilities Commission in a general rate making case issued on 30 April 1974 is moot where Southern Bell filed a new application for another rate increase while this case was on appeal to the Court of Appeals, and the Commission's order in that case filed on 19 December 1975 rendered all questions raised in this appeal academic.

    Justice LAKE did not participate in the consideration or decision of this case.

APPEAL of right under General Statute 7A-30(3) by Southern Bell Telephone and Telegraph Company (hereinafter Southern Bell) from decision of the Court of Appeals, 24 N.C. App. 327, 210 S.E. 2d 543 (1975) affirming an order of the North Carolina Utilities Commission (hereinafter Commission) in a general rate-making case. This case was docketed and argued as No. 77 at the Spring Term 1975.

Southern Bell filed with the Commission on June 30, 1973, an application seeking approval of an increase in rates for intrastate service in North Carolina in the amount of $33,812,129. On July 30, 1973, the Commission suspended the effective date of the requested increase until further order of the Commission, declared the case to be a general rate case, and set the matter for hearing. After interventions (including that of the North Carolina Attorney General on behalf of the using and consuming public) the case was heard by the Commission in November and December, 1973.

On April 30, 1974, the Commission issued its Final Order (hereinafter Order) authorizing Southern Bell to increase its annual rates and charges by $8,271,000, effective May 15, 1974.

*Rufus L. Edmisten, Attorney General, by I. Beverly Lake, Jr., Deputy Attorney General, and Robert P. Gruber, Associate Attorney, for the State.*

*Edward B. Hipp, Commission Attorney, Maurice W. Horne, Assistant Commission Attorney, and Lee West Movius, Associate Commission Attorney, for plaintiff appellees.*

*R. C. Howison, Jr., John F. Beasley, R. Frost Branon, Jr., attorneys for defendant appellant.*

EXUM, Justice.

The ultimate relief sought by Southern Bell on this appeal is reversal of the Commission's Order and remand to the Commission for further findings and a new order in accordance with legal principles that Southern Bell contends should govern this proceeding. The Commission, Southern Bell contends, erred in that it: (1) failed to find Southern Bell's cost of equity capital as a material fact prerequisite to setting a fair rate of return on the utility's rate base; (2) understated the rate base by improperly excluding therefrom certain amounts for materials and supplies and cash working capital; (3) understated revenues obtainable under the new rates by (a) disallowing charitable contributions as an operating expense, (b) improperly allocating certain interest expense of Southern Bell's parent company, American Telephone and Telegraph Company, to Southern Bell, and (c) erroneously calculating the amount of the allocated interest expense; and (4) illegally issued its Order several days beyond the period prescribed in General Statute 62-134(b).

Utilities Comm. v. Southern Bell Telephone Co.

We note, at the outset, however, that on July 19, 1974, while this case was on appeal to the Court of Appeals, Southern Bell filed a new application for another rate increase with the Commission. By order issued August 5, 1974, the Commission set this new application for investigation and hearing in Docket No. P-55, Sub. 742, and declared the same to be a general rate case. After interventions the matter was heard October 7-29, 1975. On December 19, 1975, the Commission issued its Final Order (hereinafter 1975 Order) allowing Southern Bell a $36,-169,090 rate increase on the basis of new determinations of the fair value of Southern Bell's property, reasonable operating expenses, and fair rate of return, all as required by General Statute 62-133. No party has given notice of appeal from that decision within the 30 days allowed by General Statute 62-90 (a), although the Attorney General after intervening has obtained an extension of time until March 1, 1976, to note an appeal.

Although it is not in the record before us, we have no hesitancy in taking notice of this latter proceeding. "The device of judicial notice is available to an appellate court as well as a trial court. . . . " 1 Stansbury's North Carolina Evidence § 11 (Brandis Rev. 1973). This Court has recognized in the past that important public documents will be judicially noticed. *Staton v. R.R.*, 144 N.C. 135, 145, 56 S.E. 794, 797 (1907) (railroad reports to the Corporation Commission judicially noticed) ; 1 Stansbury's North Carolina Evidence § 13 (Brandis Rev. 1973). Consideration of matters outside the record is especially appropriate where it would disclose that the question presented has become moot, or academic, and therefore neither of the litigants has any real interest in supplementing the record. *In re Estate of Thomas*, 243 N.C. 783, 92 S.E. 2d 201 (1956).

The Commission's 1975 Order makes this appeal moot. "When, pending an appeal to this Court, a development occurs, by reason of which the questions originally in controversy between the parties are no longer at issue, the appeal will be dismissed for the reason that this Court will not entertain or proceed with a cause merely to determine abstract propositions of law or to determine which party should rightly have won in the lower court." *Parent-Teacher Association v. Board of Education*, 275 N.C. 675, 170 S.E. 2d 473 (1969). *Cf. Crew v. Thompson*, 266 N.C. 476, 146 S.E. 2d 471 (1966) ; *Cochran v. Rowe*, 225 N.C. 645, 36 S.E. 2d 75 (1945). Note, "Cases Moot

on Appeal: A Limit on the Judicial Power," 103 U. Pa. L. Rev. 772 (1955).

In the case now before us all questions raised have been rendered academic by the Commission's 1975 Order. Because of this 1975 Order no further order in the instant proceeding could be made by the Commission in favor of Southern Bell. All of the Commission's findings in this proceeding have been superseded by its findings in the 1975 Order. N. C. Gen. Stats. 62-130(d), 62-133, and 62-134. Were we to agree with any one or all of Southern Bell's contentions on this appeal, reverse and remand the case as Southern Bell asks, no further proceedings before the Commission would in fact take place. Were it not for the 1975 Order the Commission conceivably in this proceeding on remand could allow appellant additional rate increases. Because of the 1975 Order this would not be possible. We will not further entertain the cause "merely to determine abstract propositions of law." *Parent-Teacher Association v. Board of Education, supra.*

Although the mootness doctrine in federal courts is primarily grounded in the "case" or "controversy" requirement of Article III, § 2 of the United States Constitution, the case of *United States v. Anchor Coal Co.*, 279 U.S. 812 (1929) is sufficiently analogous to the instant situation to support our determination of mootness. The facts in that case, known as the "Lake Cargo Rate Case," are set out in Arnold, "Trial by Combat and the New Deal," 47 Harv. L. Rev. 913, 915 (1934) as follows:

> . . . [T]he entire coal industries of Pennsylvania and West Virginia were awaiting an interpretation of the Interstate Commerce Act. A bitter dispute was in process of litigation. The Interstate Commerce Commission had been enjoined from requiring a certain differential between West Virginia and Pennsylvania coal mines. In order to clarify the situation pending an appeal, a compromise rate had been approved. This was considered by the parties to be only a necessary compromise until the Supreme Court could make its decision. Instead of deciding the question . . . the Supreme Court held that no "issues" were before it.

The Supreme Court held that because of the intervening compromise rate order the controversy was "no longer a subject appropriate for judicial action." 279 U.S. at 813. In the case

before us the new rates were allowed not on the basis of a compromise pending appeal but after a full, adversary hearing and fresh determinations of changed facts by the Commission. The case for mootness here is, consequently, considerably stronger than it was in *Anchor Coal Co.*

The short of it is that because of the Commission's 1975 Order a dispute between the parties to this appeal no longer exists.

When a case becomes moot while on appeal, the usual disposition is simply to dismiss the appeal. *Parent-Teacher Association v. Board of Education, supra.* This procedure, however, leaves the decision of the Court of Appeals undisturbed as a precedent when, but for intervening mootness, it might not have remained so. While we express no opinion as to its correctness, the better practice in this circumstance is to vacate the decision of the Court of Appeals. *See* Note, "Cases Moot on Appeal: A Limit on the Judicial Power," *supra* at 793-94. As the appeal is to be dismissed for reasons arising subsequent to a proper notice of appeal, each party will pay its own costs in this Court. Costs in the Court of Appeals will stand as heretofore determined. *Cf. Wikel v. Board of Commissioners,* 120 N.C. 451, 27 S.E. 117 (1897).

Appeal dismissed. Decision of Court of Appeals vacated.

Justice LAKE did not participate in the consideration or decision of this case.