TYSON, Judge.
*198 Mecklenburg County Sheriff Irwin Carmichael ("the Sheriff") appeals, in his official capacity, from two orders of the superior court ordering the Sheriff to release two individuals from his custody. We vacate the superior court's orders and remand to the superior court to dismiss the habeas corpus petitions for lack of subject matter jurisdiction.
I. Background
A. 287(g) Agreement and ICE Detainer Requests
The Sheriff and Immigration and Customs Enforcement ("ICE"), an agency under the jurisdiction and authority of the United States Department of Homeland Security ("DHS"), entered into a written agreement (the "287(g) Agreement") on 28 February 2017 pursuant to 8 U.S.C. § 1357(g)(1).
The federal Immigration and Nationality Act ("INA") authorizes DHS to enter into formal cooperative agreements, like the 287(g)
*199 Agreement, with state and local law enforcement agencies and officials. See 8 U.S.C. § 1357(g). Under these agreements, state and local authorities and their officers are subject to the supervision of the Secretary of Homeland Security and are authorized to perform specific immigration enforcement functions, including, in part, investigating, apprehending, and detaining illegal aliens. 8 U.S.C. §§ 1357(g)(1)-(9). In the absence of a formal cooperative agreement, the United States Code additionally provides local authorities may still "communicate with [ICE] regarding the immigration status of any individual ... or otherwise cooperate with [ICE] in the identification, apprehension, detention, or removal of aliens not lawfully present in the United States." 8 U.S.C. § 1357(g)(10)(A)-(B).
Upon request from DHS, state and local law enforcement may "participate in a joint task force with federal officers, provide operational support in executing a warrant, or allow federal immigration officials to gain access to detainees held in state facilities." Id. However, state and local officers may not make unilateral decisions concerning immigration enforcement under the INA. Id.
Federal agencies and officers issue a Form I-247 detainer regarding an alien to request the cooperation and assistance of state and local authorities. 8 C.F.R. § 287.7(a), (d). An immigration detainer notifies a state or locality that ICE intends to take custody of an alien when the alien is released from that jurisdiction's custody. Id. ICE requests the state or local authority's cooperate by notifying *135 ICE of the alien's release date and by holding the alien for up to 48 hours thereafter for ICE to take custody. Id. In addition to detainers, ICE officers may also issue administrative warrants based upon ICE's determination that probable cause exists to remove the alien from the United States. Lopez-Lopez v. Cty. of Allegan , 321 F.Supp.3d 794, 799 (W.D. Mich. 2018) (citing Abel v. United States , 362 U.S. 217, 233-34, 80 S.Ct. 683, 4 L.Ed.2d 668 (1960) and 8 U.S.C. § 1226(a) ).
B. Chavez and Lopez' Habeas Petitions
1. Luiz Lopez
On 5 June 2017, Luiz Lopez ("Lopez") was arrested for common law robbery, felony conspiracy, resisting a public officer, and misdemeanor breaking and entering. Lopez was incarcerated at the Mecklenburg County Jail under the Sheriff's custody. Later that day, following his arrest, Lopez was served with a Form I-200 administrative immigration arrest warrant issued by DHS. Also the same day, the Sheriff's office was served with a Form I-247A immigration detainer issued by DHS. The Form I-247A requested the Sheriff to maintain custody of Lopez for up *200 48 hours after he would otherwise be released from the state's jurisdiction to allow DHS to take physical custody of Lopez. Lopez was held in jail on the state charges under a $400 secured bond.
2. Carlos Chavez
On 13 August 2017, Carlos Chavez ("Chavez") was arrested for driving while impaired, no operator's license, interfering with emergency communications, and assault on a female, and was detained at the Mecklenburg County Jail. That same day, Chavez, under his name "Carlos Perez-Mendez," was served with a Form I-200 administrative immigration warrant issued by DHS.
The Sheriff's office was served with a Form I-247A immigration detainer, issued by DHS, requesting the Sheriff to detain "Carlos Perez-Mendez" for up to 48 hours after he would otherwise be released from the state's jurisdiction to allow DHS to take physical custody of him. Chavez was held in jail for the state charges on a $100 cash bond.
At approximately 9:00 a.m., on 13 October 2017, Lopez' release from jail on state criminal matters was resolved when his $400 secured bond was purportedly made unsecured by a bond modification form. That same day, Chavez posted bond on his state criminal charges. The Sheriff continued to detain Lopez and Chavez ("Petitioners") at the county jail pursuant to the Form I-247A immigration detainers and I-200 arrest warrants issued by DHS.
At 9:13 a.m. on 13 October 2017, Chavez and Lopez filed petitions for writs of habeas corpus in the Mecklenburg County Superior Court. Petitioners recited three identical grounds to assert their continued detention was unlawful: (1) "the detainer lacks probable cause, is not a warrant, and has not been reviewed by a judicial official therefore violating [Petitioners'] Fourth Amendment rights under the United States Constitution and ... North Carolina Constitution"; (2) "[the Sheriff] lacks authority under North Carolina General Statutes to continue to detain [Petitioners] after all warrants and sentences have been served"; and (3) "[the Sheriff's] honoring of ICE's request for detention violates the anti-commandeering principles of the Tenth Amendment...." In his petition for writ of habeas corpus, Chavez alleged that he was held at the county jail pursuant to the immigration detainer and administrative warrant listing his name as "Carlos Perez-Mendez."
Later that morning, the superior court granted both Petitioners' petitions for writs of habeas corpus , and entered return orders, which ordered that the Petitioners "be immediately brought before a judge of Superior Court for a return hearing pursuant to N.C.G.S. 17-32 to *201 determine the legality of [their] confinement." The trial court also ordered the Sheriff to "immediately appear and file [returns] in writing pursuant to N.C.G.S. 17-14."
Based upon our review of a chain of emails included in the record on appeal, Mecklenburg County Public Defender's Office Investigator, Joe Carter, notified Marilyn Porter, in-house legal counsel for the Sheriff's office, the petitions for writs of habeas corpus had *136 been filed. At 9:30 a.m. on October 13, Porter forwarded Carter's email to the Sheriff; Sean Perrin, outside legal counsel for the Sheriff; and eight other individuals affiliated with the Sheriff's office. Porter stated in her email that "I do not acknowledge receipt of any of [Carter's] emails on this topic. We will see who is the subject of this Writ-and what Judge signed."
In the same chain of emails, Sheriff's Captain Donald Belk responded he had received notice from the clerk of court that Petitioners' "cases are on in 5350 this morning." Belk also wrote, "CHAVEZ, CARLOS 451450, he was put in ICE custody this morning. I have informed Lock Up that Chavez is in ICE custody and should not go to court." Belk's email also stated, "LOPEZ, LUIS 346623, he is in STATE custody."
After the superior court signed its return orders, Public Defender Investigator Carter went to the Sheriff's office. An employee at the front desk informed him that neither the Sheriff nor his in-house counsel, Porter, were present at the office. The front desk receptionist refused to accept service of the superior court's return orders and the Petitioners' habeas petitions. Carter left copies of the orders and petitions on the Sheriff's front desk at 10:23 a.m. Carter then went to the county jail and left copies of the orders and petitions with a sheriff's deputy at 10:26 a.m.
At 11:57 a.m. that morning and without notice of the hearing to the Sheriff, the superior court began a purported return hearing on Petitioners' habeas petitions. The Sheriff did not appear at the hearing, did not produce Petitioners before the court, and had not yet filed returns pursuant to N.C. Gen. Stat. § 17-14 (2017).
During the return hearing, Petitioners' counsel provided the court with Carter's certificates of service of the Petitioners' habeas petitions and the court's return orders. Petitioners' counsel informed the court about the email sent by Carter to the Sheriff's in-house counsel, Porter, earlier that day. The court ruled Petitioners' continued detention was unlawful and ordered the Sheriff to immediately release Petitioners.
Later that day, after the superior court had ordered Petitioners to be released, counsel for the Sheriff timely filed written returns for both Petitioners' cases within the limits allowed by *202 N.C. Gen. Stat. § 17-26 (2017). Before the superior court issued its orders to release Petitioners, the Sheriff's office had turned physical custody of both Petitioners over to ICE officers.
On 6 November 2017, the Sheriff filed petitions for writs of certiorari with this Court to seek review of the superior court's 13 October 2017 orders. The Sheriff also filed petitions for a writ of prohibition to prevent the superior court from ruling on habeas corpus petitions filed in state court, premised upon the Sheriff's alleged lack of authority to detain alien inmates subject to federal immigration warrants and detainer requests. On 22 December 2017, this Court allowed the Sheriff's petitions for writs of certiorari and writ of prohibition.
On 22 January 2018, the Sheriff served a proposed record on appeal. Petitioners objected to inclusion of two documents, a version of the Form I-200 immigration arrest warrant for Lopez signed by a DHS immigration officer and the 287(g) Agreement between ICE and the Sheriff's office. The trial court held a hearing to settle the record on appeal. The trial court ordered the 287(g) Agreement to be included in the record on appeal and the signed Form I-200 warrant for Lopez not to be included.
The record on appeal was filed and docketed with this Court on 27 March 2018. Prior to the Sheriff submitting his brief, Petitioners filed a motion to strike the 287(g) Agreement and a petition for writ of certiorari challenging the trial court's order, which had settled the record on appeal. By an order issued 4 May 2018, this Court denied Petitioners' petition for writ of certiorari "without prejudice to assert argument in direct appeal." Petitioners' motion to strike the 287(g) Agreement from the record on appeal was dismissed by an order of this Court entered 12 September 2018.
On 27 April 2018, the United States filed a motion for leave to file an amicus curiae brief. By an order dated 1 May 2018, this *137 Court allowed the United States' ("Amicus") motion.
On 27 April 2018, the Sheriff filed his appellate brief. Included in the appendix to the brief was a copy of the ICE Operations Manual. On 2 July 2018, Petitioners filed a motion to strike the ICE Operations Manual from the Sheriff's brief. This Court denied Petitioners' motion to strike the ICE Operations Manual by an order entered 12 September 2018.
II. Jurisdiction
Jurisdiction to review this appeal lies with this Court pursuant to the Court's order granting the Sheriff's petitions for writs of certiorari and prohibition entered 22 December 2017. N.C. Gen. Stat. § 1-269 (2017).
*203 III. Analysis
The Sheriff, Petitioners, and Amicus all present the same arguments with regard to both Petitioners. We review the parties' arguments as applying to both of the superior court's orders.
The Sheriff argues the superior court was without jurisdiction to consider Petitioners' petitions for writs of habeas corpus , or to issue the writs, because of the federal government's exclusive control over immigration under the United States Constitution, the authority delegated to him under the 287(g) Agreement, and under the administrative warrants and immigration detainers issued against Petitioners. See 8 U.S.C. § 1357(g)(10)(A)-(B).
A. Mootness
Petitioners initially argue the cases are moot, because the Sheriff has turned Petitioners over to the physical custody of ICE. The Sheriff argues that even if the cases are moot, the issues fall within an exception to the mootness doctrine.
"Whenever, during the course of litigation it develops that the relief sought has been granted or that the questions originally in controversy between the parties are no longer at issue, the case should be dismissed [as moot.]" In re Peoples, 296 N.C. 109, 147, 250 S.E.2d 890, 912 (1978). "A case is 'moot' when a determination is sought on a matter which, when rendered, cannot have any practical effect on the existing controversy." Roberts v. Madison Cty. Realtors Ass'n , 344 N.C. 394, 398-99, 474 S.E.2d 783, 787 (1996) (citation omitted).
The issues in the case before us are justiciable where the question involves is a "matter of public interest." Matthews v. Dep't of Transportation , 35 N.C. App. 768, 770, 242 S.E.2d 653, 654 (1978). "In such cases the courts have a duty to make a determination." Id. (citation omitted).
Even if the Sheriff is not likely to be subject to further habeas petitions filed by Chavez and Lopez or orders issued thereon, this matter involves an issue of federal and state jurisdiction to invoke the "public interest" exception to mootness. Under the "public interest" exception to mootness, an appellate court may consider a case, even if technically moot, if it "involves a matter of public interest, is of general importance, and deserves prompt resolution." N.C. State Bar v. Randolph , 325 N.C. 699, 701, 386 S.E.2d 185, 186 (1989). Our appellate courts have previously applied the "public interest" exception to otherwise moot cases of clear and far-reaching significance, for members of the public beyond just the *204 parties in the immediate case. See, e.g. , Granville Cty. Bd. of Comm'rs v. N.C. Hazardous Waste Mgmt. Comm'n , 329 N.C. 615, 623, 407 S.E.2d 785, 790 (1991) (applying the "public interest" exception to review case involving location of hazardous waste facilities); In re Brooks , 143 N.C. App. 601, 605-06, 548 S.E.2d 748, 751-52 (2001) (applying the "public interest" exception to police officers' challenge of a State Bureau of Investigation procedure for handling personnel files containing "highly personal information" and recognizing that "the issues presented ... could have implications reaching far beyond the law enforcement community").
Similar to the procedural posture of the Sheriff's appeal, this Court applied the "capable of repetition, but evading review" as well as the "public interest" exception in State v. Corkum to review a defendant's otherwise moot appeal, which was before this Court on a writ of certiorari.
*138 State v. Corkum , 224 N.C. App. 129, 132, 735 S.E.2d 420, 423 (2012) (holding that an issue of felon's confinement credit under structured sentencing under the Justice Reinvestment Act of 2011 required review because "all felons seeking confinement credit following revocation of post-release supervision will face similar time constraints when appealing a denial of confinement credit effectively preventing the issue regarding the trial judge's discretion from being resolved").
The Sheriff's appeal presents significant issues of public interest because it involves the question of whether our state courts possess jurisdiction to review habeas petitions of alien detainees ostensibly held under the authority of the federal government. This issue potentially impacts habeas petitions filed by suspected illegal aliens held under 48-hour ICE detainers directed towards the Sheriff and the many other court and local law enforcement officials across the state. The Sheriff's filings show that several other habeas petitions filed by ICE detainees were pending and acted upon, but held in abeyance after a writ of prohibition was issued by this Court. Prompt resolution of this issue is essential because it is likely other habeas petitions will be filed in our state courts, which impacts ICE's ability to enforce federal immigration law.
Resolution of the Sheriff's appeal potentially affects many other detainees, local law enforcement agencies, ICE, and other court and public officers and employees. For the reasons above and in the interest of the public, we review the Sheriff's appeal. See Randolph , 325 N.C. at 701, 386 S.E.2d at 186 ; Corkum , 224 N.C. App. at 132, 735 S.E.2d at 423.
B. Judicial Notice of 287(g) Agreement
The Sheriff included the 287(g) Agreement between his office and ICE in the record to this Court to support his arguments on appeal.
*205 Notwithstanding the multiple prior rulings on this issue, Petitioners argue this Court should not consider the 287(g) Agreement between the Sheriff and ICE in deciding the matter because the 287(g) Agreement was not submitted to the superior court.
As previously ruled upon by the superior court and this Court, the 287(g) Agreement is properly in the record on appeal and bears upon the issue of whether the superior court possessed subject matter jurisdiction to consider the petitions and issue these writs of habeas corpus. An appellate court may also consider materials that were not before the lower tribunal to determine whether subject matter jurisdiction exists. See N.C. ex rel Utils. Comm'n. v. S. Bell Tel. , 289 N.C. 286, 288, 221 S.E.2d 322, 323-24 (1976) ; N.C. Gen. Stat. § 8C-1, Rule 201(c) (2017) ("A court may take judicial notice, whether requested or not").
The device of judicial notice is available to an appellate court as well as a trial court. This Court has recognized in the past that important public documents will be judicially noticed. Consideration of matters outside the record is especially appropriate where it would disclose that the question presented has become moot, or academic[.]
S. Bell , 289 N.C. at 288, 221 S.E.2d at 323-24 (internal quotation and citations omitted).
In Bell , the Supreme Court of North Carolina judicially noticed an order from the Utilities Commission to assess whether an appeal by a telephone company was moot. Id. ; see also State ex rel. Comm'r of Ins. v. N.C. Auto. Rate Admin. Office , 293 N.C. 365, 381, 239 S.E.2d 48, 58 (1977) (taking judicial notice of the North Carolina Rate Bureau's filing with the Commissioner of Insurance).
The 287(g) Agreement between the Sheriff and ICE is a controlling public document. ICE maintains listings and links to all the current 287(g) agreements it has entered into with local law enforcement entities across the United States on its website, including the 28 February 2017 Agreement with the Sheriff. See U.S. Immigration and Customs Enforcement, Delegation of Immigration Authority Section 287(g) Immigration and Nationality Act , https://www.ice.gov/287g (last visited Oct. 18, 2018).
As part of the record on appeal and as verified above, we review the 287(g) Agreement, as an applicable public document, for the purpose of considering the trial court's subject matter jurisdiction to rule upon Petitioners' habeas petitions. See *206 *139 S. Bell , 289 N.C. at 288, 221 S.E.2d at 323-24. Petitioners' argument that we should not consider the 287(g) Agreement because it was not presented to the superior court is wholly without merit and is dismissed.
C. Superior Court Lacked Subject-Matter Jurisdiction
The Sheriff and Amicus assert the superior court lacked subject matter jurisdiction to review Petitioners' habeas petitions, issue writs of habeas corpus , and order Petitioners' release. The Sheriff' argues the superior court "had no jurisdiction to rule on immigration matters under the guise of using this state's habeas corpus statutes, because immigration matters are exclusively federal in nature." Petitioners respond and assert the superior court had jurisdiction to issue the writs of habeas corpus because "the Sheriff and his deputies did not act under color of federal law."
"Subject matter jurisdiction refers to the power of the court to deal with the kind of action in question[, and] ... is conferred upon the courts by either the North Carolina Constitution or by statute." Harris v. Pembaur , 84 N.C. App. 666, 667, 353 S.E.2d 673, 675 (1987) (citation omitted). Whether subject matter jurisdiction exists over a matter is firmly established:
Subject matter jurisdiction cannot be conferred upon a court by consent, waiver or estoppel, and failure to demur or object to the jurisdiction is immaterial. The issue of subject matter jurisdiction may be considered by the court at any time, and may be raised for the first time on appeal.
In re T.B. , 177 N.C. App. 790, 791, 629 S.E.2d 895, 896-97 (2006) (citations and internal quotation marks omitted).
"The standard of review for lack of subject matter jurisdiction is de novo. " Keith v. Wallerich , 201 N.C. App. 550, 554, 687 S.E.2d 299, 302 (2009). "In determining whether subject matter jurisdiction exists, a court may consider matters outside of the pleadings." Id.
Before addressing the Sheriff's argument, we initially address Petitioners' contention that the superior court could exercise subject matter jurisdiction on these matters. Petitioners argue "North Carolina law does not permit civil immigration detention, even where there is a 287(g) agreement[.]"
Pursuant to 8 U.S.C. § 1357(g)(1) :
[T]he Attorney General may enter into a written agreement with a State, or any political subdivision of a State, *207 pursuant to which an officer ... of the State ..., who is determined by the Attorney General to be qualified to perform a function of an immigration officer in relation to the investigation, apprehension, or detention of aliens in the United States ... may carry out such function at the expense of the State ... to the extent consistent with State and local law. (emphasis supplied).
The General Assembly of North Carolina expressly enacted statutory authority for state and local law enforcement agencies and officials to enter into 287(g) agreements with federal agencies. The applicable statute states:
Where authorized by federal law , any State or local law enforcement agency may authorize its law enforcement officers to also perform the functions of an officer under 8 U.S.C. § 1357(g) if the agency has a Memorandum of Agreement or Memorandum of Understanding for that purpose with a federal agency. State and local law enforcement officers authorized under this provision are authorized to hold any office or position with the applicable federal agency required to perform the described functions. (emphasis supplied).
N.C. Gen. Stat. § 128-1.1(c1) (2017). 8 U.S.C. § 1357(g)(1) permits the Attorney General to enter into agreements with local law enforcement officers to authorize them to "perform a function of an immigration officer" to the extent consistent with state law.
Petitioners contend N.C. Gen. Stat. § 162-62 prevents local law enforcement officers from performing the functions of immigration officers or to assist DHS in civil immigration detentions. N.C. Gen. Stat. § 162-62 (2017) provides:
(a) When any person charged with a felony or an impaired driving offense is confined for any period in a county jail ... the administrator ... shall attempt to determine *140 if the prisoner is a legal resident of the United States by an inquiry of the prisoner, or by examination of any relevant documents, or both.
(b) If the administrator ... is unable to determine if that prisoner is a legal resident or citizen of the United States ... the administrator ... shall make a query of Immigration and Customs Enforcement of the United *208 States Department of Homeland Security. If the prisoner has not been lawfully admitted to the United States, the United States Department of Homeland Security will have been notified of the prisoner's status and confinement at the facility by its receipt of the query from the facility.
(c) Nothing in this section shall be construed to deny bond to a prisoner or to prevent a prisoner from being released from confinement when that prisoner is otherwise eligible for release. (Emphasis supplied).
Petitioners purport to characterize N.C. Gen. Stat. § 162-62(c) as forbidding sheriffs from detaining prisoners who are subject to immigration detainers and administrative warrants beyond the time they would otherwise be released from custody or jail under state law. Petitioners' assertion of the applicability of this statute is incorrect.
N.C. Gen. Stat. § 162-62 specifically refers to a sheriff's duty to inquire into a prisoner's immigration status and, if that prisoner is within the country unlawfully, mandates the sheriff "shall" notify DHS of the prisoner's "status and confinement." Id. N.C. Gen. Stat. § 162-62 does not refer to a 287(g) agreement, federal immigration detainer requests, administrative warrants or prevent a sheriff from performing immigration functions pursuant to a 287(g) agreement, or under color of federal law. See id.
N.C. Gen. Stat. § 162-62(c) only provides that "[n]othing in this section shall be construed ... to prevent a prisoner from being released from confinement when that prisoner is otherwise eligible for release ." (Emphasis supplied). This statute does not mandate a prisoner must be released from confinement, only that nothing in that specific section dealing with reporting a prisoner's immigration status shall prevent a prisoner from being released when they are "otherwise eligible." Id.
N.C. Gen. Stat. § 128-1.1 specifically authorizes state and local law enforcement officers to enter into 287(g) agreements under 8 U.S.C. § 1357(g) and perform the functions of immigration officers, including detention of aliens. No conflict exists in the statutes between N.C. Gen. Stat. §§ 162-62 and 128-1.1.
Even though Petitioners assert these two statutes are inconsistent, N.C. Gen. Stat. § 128-1.1 controls over N.C. Gen. Stat. § 162-62, as the more specific statute. "[W]here two statutory provisions conflict, one of which is specific or 'particular' and the other 'general,' the more specific statute controls in resolving any apparent conflict." Furr v. Noland , 103 N.C. App. 279, 281, 404 S.E.2d 885, 886 (1991).
*209 N.C. Gen. Stat. § 128-1.1 specifically authorizes state and local law enforcement agencies to enter into agreements with the federal government to perform the functions of immigration officers under 8 U.S.C. § 1357(g), as present here. The express language of 8 U.S.C. § 1357(g)(1) lists the "detention of aliens within the United States" as one of the "function[s] of an immigration officer."
N.C. Gen. Stat. § 162-62 does not specifically regulate the conduct of sheriffs acting as immigration officers pursuant to a 287(g) agreement under 8 U.S.C. § 1357(g), or under color of federal law. Instead, N.C. Gen. Stat. § 162-62 imposes a specific and mandatory duty upon North Carolina sheriffs, as administrators of county jails, to inquire, verify, and report a detained prisoner's immigration status. N.C. Gen. Stat. § 162-62.
Contrary to Petitioners' argument, North Carolina law does not forbid state and local law enforcement officers from performing the functions of federal immigration officers, but the policy of North Carolina as enacted by the General Assembly, expressly authorizes sheriffs to enter into 287(g) agreements to permit them to perform such functions. See N.C. Gen. Stat. § 128-1.1. We reject and *141 overrule their contention that "North Carolina law does not permit civil immigration detention, even where there is a 287(g) agreement[.]"
D. Federal Government's Supreme and Exclusive Authority over Immigration
The Sheriff contends the superior court did not possess subject matter jurisdiction in these cases. We agree.
The Supremacy Clause of the Constitution of the United States establishes that the Constitution and laws of the United States "shall be the supreme Law of the Land." U.S. Const. art. VI, cl. 2. Nearly 200 years ago, the Supreme Court of the United States held the Supremacy Clause prevents state and local officials from taking actions or passing laws to "retard, impede, burden, or in any manner control" the execution of federal law. McCulloch v. Maryland , 17 U.S. (4 Wheat.) 316, 436, 4 L.Ed. 579 (1819).
"The Government of the United States has broad, undoubted power over the subject of immigration and the status of aliens." Arizona v. United States , 567 U.S. 387, 394, 132 S.Ct. 2492, 2498, 183 L.Ed.2d 351, 366 (2012). This broad authority derives from the federal government's delegated and enumerated constitutional power "[t]o establish an uniform Rule of Naturalization[.]" U.S. Const. art. I, § 8, cl. 4. "Power to regulate immigration is unquestionably exclusively a federal power."
*210 DeCanas v. Bica , 424 U.S. 351, 354, 96 S.Ct. 933, 47 L.Ed.2d 43 (1976), superseded by statute on other grounds as recognized in Arizona , 567 U.S. at 404, 132 S.Ct. at 2504, 183 L.Ed.2d at 372.
The Sheriff cites several other states' appellate court decisions, which hold state courts lack jurisdiction to consider petitions for writs of habeas corpus and other challenges to a detainee's detention pursuant to the federal immigration authority. See Ricketts v. Palm Beach County Sheriff , 985 So.2d 591 (Fla. Dist. Ct. App. 2008) ; State v. Chavez-Juarez, 185 Ohio App. 3d 189, 192, 923 N.E.2d 670, 673 (2009).
In Ricketts , the Court of Appeals of Florida addressed a similar situation to the instant case. Ricketts was arrested on a state criminal charge and detained by the sheriff. Ricketts , 985 So.2d at 591. His bond was set at $1,000; however, the sheriff refused to accept the bond and release Ricketts, due to a federal immigration hold issued by ICE. Id . As in the present case, Ricketts first sought habeas corpus relief in state court. Id . at 592. The trial court denied all relief, reasoning that the issues were within the exclusive jurisdiction of the federal government. Id .
On appeal, the Court of Appeals of Florida agreed with the trial court "that appellant cannot secure habeas corpus relief from the state court on the legality of his federal detainer." Id . The court reasoned that the constitutionality of his detention pursuant to the immigration hold "is a question of law for the federal courts." Id . at 592-93. The court further explained that "a state court cannot adjudicate the validity of the federal detainer, as the area of immigration and naturalization is within the exclusive jurisdiction of the federal government." Id . at 593 (citing Plyler v. Doe , 457 U.S. 202, 225, 102 S.Ct. 2382, 2398-99, 72 L.Ed.2d 786, 804 (1982) ; and DeCanas , 424 U.S. at 354, 96 S.Ct. at 935-36, 47 L.Ed.2d at 43 ("Power to regulate immigration is unquestionably exclusively a federal power") ).
The Court of Appeals of Ohio followed the Florida Court of Appeals' decision in Ricketts and reached a similar conclusion in Chavez-Juarez . Chavez was arrested for operating a vehicle under the influence of alcohol. Chavez-Juarez , 185 Ohio App.3d at 193, 923 N.E.2d at 673. After arraignment, the state court ordered Chavez released; however, he was held pursuant to a federal immigration detainer, was turned over to ICE, and deported to Mexico. Id. at 193-94, 923 N.E.2d at 674. His attorney filed a motion to have ICE officers held in contempt for violating the state court's release order. Id . at 194, 923 N.E.2d at 674.
The trial court concluded that it lacked jurisdiction over ICE and denied the contempt motion, because the federal courts have pre-emptive jurisdiction over immigration issues. Id . at 199, 923 N.E.2d at 679. The Ohio Court of Appeals recognized "Control over immigration and *211 naturalization is entrusted *142 exclusively to the Federal Government, and a State has no power to interfere." Id. (quoting Nyquist v. Mauclet , 432 U.S. 1, 10, 97 S.Ct. 2120, 53 L.Ed.2d 63 (1977) ).
The Ohio Court of Appeals affirmed the trial court's denial of the contempt motion, and stated:
Under federal regulation, the Clark County Sheriff's Office was required to hold Chavez for 48 hours to allow ICE to assume custody. Chavez's affidavit indicates that he was held in state custody for approximately 48 hours after the trial court released him on his own recognizance. If Chavez wished to challenge his detention, the proper avenue at that point would have been to file a petition in the federal courts, not an action in contempt with the state court, which did not have the power to adjudicate federal immigration issues.
Id. at 202, 923 N.E.2d at 680.
We find the reasoning in both Ricketts and Chavez-Juarez persuasive and their applications of federal immigration law to state proceedings to be correct.
A state court's purported exercise of jurisdiction to review the validity of federal detainer requests and immigration warrants infringes upon the federal government's exclusive federal authority over immigration matters. See Plyler, 457 U.S. at 225, 102 S.Ct. at 2398-99, 72 L.Ed.2d at 804 ; DeCanas , 424 U.S. at 354, 96 S.Ct. at 935-36, 47 L.Ed.2d at 43. The superior court did not possess subject matter jurisdiction, or any other basis, to receive and review the merits of Petitioners' habeas petitions, or issue orders other than to dismiss for lack of jurisdiction, as it necessarily involved reviewing and ruling on the legality of ICE's immigration warrants and detainer requests.
E. State Court Lacks Jurisdiction Even Without Formal Agreement
Even if the express 287(g) Agreement between the Sheriff and ICE did not exist or was invalid, federal law permits and empowers state and local authorities and officers to "communicate with [ICE] regarding the immigration status of any individual ... or otherwise to cooperate with [ICE] in the identification, apprehension, detention , or removal of aliens not lawfully present in the United States" in the absence of a formal agreement. 8 U.S.C. § 1357(g)(10)(A)-(B) (emphasis supplied).
A state court's purported exercise of jurisdiction to review petitions challenging the validity of federal detainers and administrative warrants *212 issued by ICE, and to potentially order alien detainees released, constitutes prohibited interference with the federal government's supremacy and exclusive control over matters of immigration. See U.S. Const. art. I, § 8, cl. 4 ; U.S. Const. art. VI, cl. 2 ; Nyquist , 432 U.S. at 10, 97 S.Ct. at 2125-26, 53 L.Ed.2d at 63 ; Plyler, 457 U.S. at 225, 102 S.Ct. at 2398-99, 72 L.Ed.2d at 804 ; DeCanas , 424 U.S. at 354, 96 S.Ct. at 935-36, 47 L.Ed.2d at 43.
F. State Court Lacks Jurisdiction to Order Release of Federal Detainees
An additional compelling reason that prohibits the superior court from exercising jurisdiction to issue habeas writs to alien petitioners, is a state court's inability to grant habeas relief to individuals detained by federal officers acting under federal authority.
Nearly 160 years ago, the Supreme Court of the United States held in Ableman v. Booth that "No state judge or court, after they are judicially informed that the party is imprisoned under the authority of the United States, has any right to interfere with him, or to require him to be brought before them." Ableman v. Booth , 62 U.S. (21 How.) 506, 524, 16 L.Ed. 169 (1859).
The Supreme Court of the United States reaffirmed this principle in In re Tarble , in which the Court stated:
State judges and state courts, authorized by laws of their states to issue writs of habeas corpus , have, undoubtedly, a right to issue the writ in any case where a party is alleged to be illegally confined within their limits, unless it appear upon his application that he is confined under the authority, or claim and color of the authority, of the United States, by an officer of that government. If such fact appear *143 upon the application, the writ should be refused.
...
But, after the return is made, and the state judge or court judicially apprised that the party is in custody under the authority of the United States, they can proceed no further. They then know that the prisoner is within the dominion and jurisdiction of another government, and that neither the writ of habeas corpus nor any other process issued under state authority can pass over the line of division between the two sovereignties. He is then within the dominion and exclusive jurisdiction of the United *213 States. If he has committed an offence against their laws, their tribunals alone can punish him. If he is wrongfully imprisoned, their judicial tribunals can release him and afford him redress.
...
[T ]hat the state judge or state court should proceed no further when it appears, from the application of the party, or the return made, that the prisoner is held by an officer of the United States under what, in truth, purports to be the authority of the United States; that is, an authority the validity of which is to be determined by the Constitution and laws of the United States. If a party thus held be illegally imprisoned, it is for the courts or judicial officers of the United States, and those courts or officers alone, to grant him release.
In re Tarble , 80 U.S. (13 Wall). 397, 409-11, 20 L.Ed. 597, 601-02 (1871) (emphasis supplied) (citations omitted).
In sum, if a prisoner's habeas petition indicates the prisoner is held: (1) under the authority, or color of authority, of the federal government; and, (2) by an officer of the federal government under the asserted "authority of the United States", the state court must refuse to issue a writ of habeas corpus . See id.
It is undisputed the Sheriff's continued detention of Petitioners, after they were otherwise released from state custody, was pursuant to the federal authority delegated to his office under the 287(g) Agreement. Appendix B of the 287(g) Agreement states, in relevant part:
This Memorandum of Agreement (MOA) is between the U.S. Department of Homeland Security's U.S. Immigration and Customs Enforcement (ICE) and the Law Enforcement [Mecklenburg County Sheriff's Office] (MCSO), pursuant to which selected MCSO personnel are authorized to perform immigration enforcement duties in specific situations under Federal authority . (Emphasis supplied).
Although the 287(g) Agreement was not attached to Petitioners' habeas petitions, the petitions indicated to the court the Sheriff was acting under color of federal authority, if not actual federal authority. Petitioners' petitions acknowledge and specifically assert the Sheriff was purporting to act under the authority of the United States by detaining *214 them after they would have otherwise been released from custody for their state criminal charges.
Petitioners' petitions both acknowledge and assert the Sheriff was detaining them "at the behest of the federal government." Petitioners' habeas petitions refer to the 287(g) Agreement. Copies of the Form I-200 immigration arrest warrant and Form I-247A detainer request were attached to Chavez's habeas petition submitted to the superior court.
A copy of the Form I-200 warrant was attached to Lopez's habeas petition, and the petition itself refers to the existence of the Form I-247A detainer, stating: "the jail records, which have been viewed by counsel, indicate that there is an immigration detainer lodged against [Lopez] pursuant to a Form I-247[.]"
Additionally, 8 U.S.C. § 1357(g)(3) indicates state and local law enforcement officers act under color of federal authority when performing immigration functions authorized under a 287(g) agreement. The statute provides: "In performing a function under this subsection [ § 1357(g) ], an officer or employee of a State or political subdivision of a State shall be subject to the direction and supervision of the Attorney General [of the United States. ]" 8 U.S.C. § 1357(g)(3) (emphasis supplied).
*144 The Sheriff was acting under the actual authority of the United States by detaining Petitioners under the immigration enforcement authority delegated to him under the 287(g) Agreement, and under color of federal authority provided by the administrative warrants and Form I-247A detainer requests for Petitioners issued by ICE. Petitioners' own habeas petitions also indicate the Sheriff was acting under color of federal authority for purposes of the prohibitions against interference by state courts and state and local officials. See Tarble , 80 U.S. (13 Wall) at 409, 20 L.Ed. at 601.
The next issue is whether the Sheriff was acting as a federal officer under the 287(g) Agreement by detaining Petitioners pursuant to the detainer requests and administrative warrants. See id. After careful review of state and federal authorities, no court has apparently decided the issue of whether a state or local law enforcement officer is considered a federal officer when they are performing immigration functions authorized under a 287(g) Agreement.
In contexts other than immigration enforcement, several federal district courts and United States courts of appeal for various circuits have held state and local law enforcement officers are "federal officers" when they have been authorized or deputized by federal law enforcement *215 agencies, such as the Drug Enforcement Agency, Federal Bureau of Investigation, and the United States Marshals Service. United States v. Martin , 163 F.3d 1212, 1214-15 (10th Cir.1998) (holding that local police officer deputized to participate in a FBI narcotics investigation is a federal officer within the meaning of 18 U.S.C. § 115(a)(1)(B) [defining the crime of threatening to murder a federal law enforcement officer] ); United States v. Torres , 862 F.2d 1025, 1030 (3d Cir.1988) (holding that local police officer deputized to participate in a DEA investigation is a federal officer within the meaning of 18 U.S.C. § 111 [defining the crime of assault on a federal official] ); United States v. Diamond , 53 F.3d 249, 251-52 (9th Cir.1995) (holding that a state official specially deputized as a U.S. Marshal was an officer of the United States even though he was not technically a federal employee); DeMayo v. Nugent , 475 F.Supp.2d 110, 115 (D. Mass. 2007) ("State police officers deputized as federal agents under the DEA constitute federal agents acting under federal law"), rev'd on other grounds , 517 F.3d 11 (1st Cir.2008).
The United States Court of Appeals for the Fourth Circuit specifically recognized an employee of the State of North Carolina as being a federal officer for purposes of the assault on an federal officer statute, when the state employee was assisting the Internal Revenue Service. United States v. Chunn , 347 F.2d 717, 721 (4th Cir.1965). The Fourth Circuit has also held that under a 287(g) Agreement, local law enforcement officers effectively become federal officers of ICE, as they are deputized to perform immigration-related enforcement functions. United States v. Sosa-Carabantes, 561 F.3d 256, 257 (4th Cir.2009) ("The 287(g) Program permits ICE to deputize local law enforcement officers to perform immigration enforcement activities pursuant to a written agreement." (citing 8 U.S.C. § 1357(g)(1) ) ).
The United States Court of Appeals for the Fifth Circuit recently stated, "Under [287(g) agreements], state and local officials become de facto immigration officers[.]" City of El Cenizo v. Texas , 890 F.3d 164, 180 (5th Cir.2018) ; see also People ex rel. Norfleet v. Staton , 73 N.C. 546, 550 (1875) ("[T]here is no difference between the acts of de facto and de jure officers so far as the public and third persons are concerned").
To the extent personnel of the Sheriff's office were deputized or empowered by DHS or ICE to perform immigration functions, including detention and turnover of physical custody, pursuant to the 287(g) Agreement, we find these federal cases persuasive to conclude the Sheriff was empowered and acting as a federal officer by detaining Petitioners under the detainer requests and administrative warrants. See Martin , 163 F.3d at 1214-15 ; Torres , 862 F.2d at 1030 ; Sosa-Carabantes , 561 F.3d at 257 ; El Cenizo , 890 F.3d at 180.
*216 Petitioners' habeas petitions clearly disclosed Petitioners were being detained under express, and color of, federal authority by the Sheriff, who was acting as a de facto *145 federal officer. See El Cenizo , 890 F.3d at 180. Under the rule enunciated by the Supreme Court of the United States in Ableman and expanded upon in Tarble , the superior court was without jurisdiction, or any other basis, to receive, review, or consider Petitioners' habeas petitions, other than to dismiss for want of jurisdiction, to hear or issue writs of habeas corpus , or intervene or interfere with Petitioner's detention in any capacity. Ableman, 62 U.S. (21 How.) at 524, 16 L.Ed. at 176 ; Tarble , 80 U.S. (13 Wall.) at 409, 20 L.Ed. at 607.
The superior court should have dismissed Petitioners' petitions for writs of habeas corpus. See N.C. Gen. Stat. § 17-4(4) (2017) ("Application to prosecute the writ [of habeas corpus ] shall be denied ... [w]here no probable ground for relief is shown in the application."). "When the record shows a lack of jurisdiction in the lower court, the appropriate action on the part of the appellate court is to arrest judgment or vacate any order entered without authority." State v. Felmet , 302 N.C. 173, 176, 273 S.E.2d 708, 711 (1981). The orders of the superior court, which purported to order the release of Petitioners, are vacated. Id.
The proper jurisdiction and venues where Petitioners may file their habeas petitions is in the appropriate federal tribunal. See 28 U.S.C. § 2241(a) ; Tarble , 80 U.S. (13 Wall.) at 411, 20 L.Ed. at 602 ("If a party thus held be illegally imprisoned, it is for the courts or judicial officers of the United States, and those courts or officers alone, to grant him release").
IV. Conclusion
The superior court lacked any legitimate basis and was without jurisdiction to review, consider, or issue writs of habeas corpus for alien Petitioners not in state custody and held under federal authority, or to issue any orders related thereon to the Sheriff. State or local officials and employees purporting to intervene or act constitutes a prohibited interference with the federal government's supreme and exclusive authority over the regulation of immigration and alienage. See U.S. Const. art. I, § 8, cl. 4 ; Ableman, 62 U.S. (21 How.) at 524, 16 L.Ed. 169 ; Tarble , 80 U.S. at 409, 20 L.Ed. at 607.
The superior court was on notice the Petitioners were detained under the express, and color of, exclusive federal authority. The Sheriff was acting as a federal officer under the statutorily authorized and *217 executed 287(g) Agreement. The orders appealed from are vacated for lack of jurisdiction and remanded to the trial court with instructions to dismiss Petitioners' habeas petitions.
A certified copy of this opinion and order shall be delivered to the Judicial Standards Commission and to the Disciplinary Hearing Commission of the North Carolina State Bar. It is so ordered.
VACATED and REMANDED.
Judge BERGER concurs.
Judge DIETZ concurs with separate opinion.