IN THE COURT OF APPEALS OF NORTH CAROLINA

 No. COA18-317

 Filed: 6 November 2018

Mecklenburg County, No. 17 CR 230629-30

CARLOS CHAVEZ, Petitioner,

 v.

IRWIN CARMICHAEL, SHERIFF, MECKLENBURG COUNTY, Respondent.

Mecklenburg County, No. 16 CR 244165

LUIS LOPEZ, Petitioner,

 v.

IRWIN CARMICHAEL, SHERIFF, MECKLENBURG COUNTY, Respondent.

 Appeal by respondent from orders entered 13 October 2017 by Judge Yvonne

Mims-Evans in Mecklenburg County Superior Court. Heard in the Court of Appeals

2 October 2017.

 National Immigration Project of the National Lawyers Guild, by Sejal Zota,
 and Goodman Carr, PLLC, by Rob Heroy, for petitioners Luis Lopez and Carlos
 Chavez.

 Womble Bond Dickenson (US) LLP, by Sean F. Perrin, for respondent.

 U.S. Department of Justice Civil Division, by Trial Attorney Joshua S. Press,
 for amicus curiae United States Department of Justice.

 TYSON, Judge.
 CHAVEZ V. CARMICHAEL

 Opinion of the Court

 Mecklenburg County Sheriff Irwin Carmichael (“the Sheriff”) appeals, in his

official capacity, from two orders of the superior court ordering the Sheriff to release

two individuals from his custody. We vacate the superior court’s orders and remand

to the superior court to dismiss the habeas corpus petitions for lack of subject matter

jurisdiction.

 I. Background

 A. 287(g) Agreement and ICE Detainer Requests

 The Sheriff and Immigration and Customs Enforcement (“ICE”), an agency

under the jurisdiction and authority of the United States Department of Homeland

Security (“DHS”), entered into a written agreement (the “287(g) Agreement”) on 28

February 2017 pursuant to 8 U.S.C. § 1357(g)(1).

 The federal Immigration and Nationality Act (“INA”) authorizes DHS to enter

into formal cooperative agreements, like the 287(g) Agreement, with state and local

law enforcement agencies and officials. See 8 U.S.C. § 1357(g). Under these

agreements, state and local authorities and their officers are subject to the

supervision of the Secretary of Homeland Security and are authorized to perform

specific immigration enforcement functions, including, in part, investigating,

apprehending, and detaining illegal aliens. 8 U.S.C. §§ 1357(g)(1)-(9). In the absence

of a formal cooperative agreement, the United States Code additionally provides local

authorities may still “communicate with [ICE] regarding the immigration status of

 -2-
 CHAVEZ V. CARMICHAEL

 Opinion of the Court

any individual . . . or otherwise cooperate with [ICE] in the identification,

apprehension, detention, or removal of aliens not lawfully present in the United

States.” 8 U.S.C. § 1357(g)(10)(A)-(B).

 Upon request from DHS, state and local law enforcement may “participate in

a joint task force with federal officers, provide operational support in executing a

warrant, or allow federal immigration officials to gain access to detainees held in

state facilities.” Id. However, state and local officers may not make unilateral

decisions concerning immigration enforcement under the INA. Id.

 Federal agencies and officers issue a Form I-247 detainer regarding an alien

to request the cooperation and assistance of state and local authorities. 8 C.F.R. §

287.7(a), (d). An immigration detainer notifies a state or locality that ICE intends to

take custody of an alien when the alien is released from that jurisdiction’s custody.

Id. ICE requests the state or local authority’s cooperate by notifying ICE of the alien’s

release date and by holding the alien for up to 48 hours thereafter for ICE to take

custody. Id. In addition to detainers, ICE officers may also issue administrative

warrants based upon ICE’s determination that probable cause exists to remove the

alien from the United States. Lopez-Lopez v. Cty. of Allegan, 321 F. Supp. 3d 794, 799

(W.D. Mich. 2018) (citing Abel v. United States, 362 U.S. 217, 233-34, 4 L. Ed. 2d 668

(1960) and 8 U.S.C. § 1226(a)).

 B. Chavez and Lopez’ Habeas Petitions

 -3-
 CHAVEZ V. CARMICHAEL

 Opinion of the Court

 1. Luiz Lopez

 On 5 June 2017, Luiz Lopez (“Lopez”) was arrested for common law robbery,

felony conspiracy, resisting a public officer, and misdemeanor breaking and entering.

Lopez was incarcerated at the Mecklenburg County Jail under the Sheriff’s custody.

Later that day, following his arrest, Lopez was served with a Form I-200

administrative immigration arrest warrant issued by DHS. Also the same day, the

Sheriff’s office was served with a Form I-247A immigration detainer issued by DHS.

The Form I-247A requested the Sheriff to maintain custody of Lopez for up 48 hours

after he would otherwise be released from the state’s jurisdiction to allow DHS to

take physical custody of Lopez. Lopez was held in jail on the state charges under a

$400 secured bond.

 2. Carlos Chavez

 On 13 August 2017, Carlos Chavez (“Chavez”) was arrested for driving while

impaired, no operator’s license, interfering with emergency communications, and

assault on a female, and was detained at the Mecklenburg County Jail. That same

day, Chavez, under his name “Carlos Perez-Mendez,” was served with a Form I-200

administrative immigration warrant issued by DHS.

 The Sheriff’s office was served with a Form I-247A immigration detainer,

issued by DHS, requesting the Sheriff to detain “Carlos Perez-Mendez” for up to 48

hours after he would otherwise be released from the state’s jurisdiction to allow DHS

 -4-
 CHAVEZ V. CARMICHAEL

 Opinion of the Court

to take physical custody of him. Chavez was held in jail for the state charges on a

$100 cash bond.

 At approximately 9:00 a.m., on 13 October 2017, Lopez’ release from jail on

state criminal matters was resolved when his $400 secured bond was purportedly

made unsecured by a bond modification form. That same day, Chavez posted bond

on his state criminal charges. The Sheriff continued to detain Lopez and Chavez

(“Petitioners”) at the county jail pursuant to the Form I-247A immigration detainers

and I-200 arrest warrants issued by DHS.

 At 9:13 a.m. on 13 October 2017, Chavez and Lopez filed petitions for writs of

habeas corpus in the Mecklenburg County Superior Court. Petitioners recited three

identical grounds to assert their continued detention was unlawful: (1) “the detainer

lacks probable cause, is not a warrant, and has not been reviewed by a judicial official

therefore violating [Petitioners’] Fourth Amendment rights under the United States

Constitution and . . . North Carolina Constitution”; (2) “[the Sheriff] lacks authority

under North Carolina General Statutes to continue to detain [Petitioners] after all

warrants and sentences have been served”; and (3) “[the Sheriff’s] honoring of ICE’s

request for detention violates the anti-commandeering principles of the Tenth

Amendment . . . .” In his petition for writ of habeas corpus, Chavez alleged that he

was held at the county jail pursuant to the immigration detainer and administrative

warrant listing his name as “Carlos Perez-Mendez.”

 -5-
 CHAVEZ V. CARMICHAEL

 Opinion of the Court

 Later that morning, the superior court granted both Petitioners’ petitions for

writs of habeas corpus, and entered return orders, which ordered that the Petitioners

“be immediately brought before a judge of Superior Court for a return hearing

pursuant to N.C.G.S. 17-32 to determine the legality of [their] confinement.” The

trial court also ordered the Sheriff to “immediately appear and file [returns] in

writing pursuant to N.C.G.S. 17-14.”

 Based upon our review of a chain of emails included in the record on appeal,

Mecklenburg County Public Defender’s Office Investigator, Joe Carter, notified

Marilyn Porter, in-house legal counsel for the Sheriff’s office, the petitions for writs

of habeas corpus had been filed. At 9:30 a.m. on October 13, Porter forwarded Carter’s

email to the Sheriff; Sean Perrin, outside legal counsel for the Sheriff; and eight other

individuals affiliated with the Sheriff’s office. Porter stated in her email that “I do

not acknowledge receipt of any of [Carter’s] emails on this topic. We will see who is

the subject of this Writ – and what Judge signed.”

 In the same chain of emails, Sheriff’s Captain Donald Belk responded he had

received notice from the clerk of court that Petitioners’ “cases are on in 5350 this

morning.” Belk also wrote, “CHAVEZ, CARLOS 451450, he was put in ICE custody

this morning. I have informed Lock Up that Chavez is in ICE custody and should not

go to court.” Belk’s email also stated, “LOPEZ, LUIS 346623, he is in STATE

custody.”

 -6-
 CHAVEZ V. CARMICHAEL

 Opinion of the Court

 After the superior court signed its return orders, Public Defender Investigator

Carter went to the Sheriff’s office. An employee at the front desk informed him that

neither the Sheriff nor his in-house counsel, Porter, were present at the office. The

front desk receptionist refused to accept service of the superior court’s return orders

and the Petitioners’ habeas petitions. Carter left copies of the orders and petitions

on the Sheriff’s front desk at 10:23 a.m. Carter then went to the county jail and left

copies of the orders and petitions with a sheriff’s deputy at 10:26 a.m.

 At 11:57 a.m. that morning and without notice of the hearing to the Sheriff,

the superior court began a purported return hearing on Petitioners’ habeas petitions.

The Sheriff did not appear at the hearing, did not produce Petitioners before the

court, and had not yet filed returns pursuant to N.C. Gen. Stat. § 17-14 (2017).

 During the return hearing, Petitioners’ counsel provided the court with

Carter’s certificates of service of the Petitioners’ habeas petitions and the court’s

return orders. Petitioners’ counsel informed the court about the email sent by Carter

to the Sheriff’s in-house counsel, Porter, earlier that day. The court ruled Petitioners’

continued detention was unlawful and ordered the Sheriff to immediately release

Petitioners.

 Later that day, after the superior court had ordered Petitioners to be released,

counsel for the Sheriff timely filed written returns for both Petitioners’ cases within

the limits allowed by N.C. Gen. Stat. § 17-26 (2017). Before the superior court issued

 -7-
 CHAVEZ V. CARMICHAEL

 Opinion of the Court

its orders to release Petitioners, the Sheriff’s office had turned physical custody of

both Petitioners over to ICE officers.

 On 6 November 2017, the Sheriff filed petitions for writs of certiorari with this

Court to seek review of the superior court’s 13 October 2017 orders. The Sheriff also

filed petitions for a writ of prohibition to prevent the superior court from ruling on

habeas corpus petitions filed in state court, premised upon the Sheriff’s alleged lack

of authority to detain alien inmates subject to federal immigration warrants and

detainer requests. On 22 December 2017, this Court allowed the Sheriff’s petitions

for writs of certiorari and writ of prohibition.

 On 22 January 2018, the Sheriff served a proposed record on appeal.

Petitioners objected to inclusion of two documents, a version of the Form I-200

immigration arrest warrant for Lopez signed by a DHS immigration officer and the

287(g) Agreement between ICE and the Sheriff’s office. The trial court held a hearing

to settle the record on appeal. The trial court ordered the 287(g) Agreement to be

included in the record on appeal and the signed Form I-200 warrant for Lopez not to

be included.

 The record on appeal was filed and docketed with this Court on 27 March 2018.

Prior to the Sheriff submitting his brief, Petitioners filed a motion to strike the 287(g)

Agreement and a petition for writ of certiorari challenging the trial court’s order,

which had settled the record on appeal. By an order issued 4 May 2018, this Court

 -8-
 CHAVEZ V. CARMICHAEL

 Opinion of the Court

denied Petitioners’ petition for writ of certiorari “without prejudice to assert

argument in direct appeal.” Petitioners’ motion to strike the 287(g) Agreement from

the record on appeal was dismissed by an order of this Court entered 12 September

2018.

 On 27 April 2018, the United States filed a motion for leave to file an amicus

curiae brief. By an order dated 1 May 2018, this Court allowed the United States’

(“Amicus”) motion.

 On 27 April 2018, the Sheriff filed his appellate brief. Included in the appendix

to the brief was a copy of the ICE Operations Manual. On 2 July 2018, Petitioners

filed a motion to strike the ICE Operations Manual from the Sheriff’s brief. This

Court denied Petitioners’ motion to strike the ICE Operations Manual by an order

entered 12 September 2018.

 II. Jurisdiction

 Jurisdiction to review this appeal lies with this Court pursuant to the Court’s

order granting the Sheriff’s petitions for writs of certiorari and prohibition entered

22 December 2017. N.C. Gen. Stat. § 1-269 (2017).

 III. Analysis

 The Sheriff, Petitioners, and Amicus all present the same arguments with

regard to both Petitioners. We review the parties’ arguments as applying to both of

the superior court’s orders.

 -9-
 CHAVEZ V. CARMICHAEL

 Opinion of the Court

 The Sheriff argues the superior court was without jurisdiction to consider

Petitioners’ petitions for writs of habeas corpus, or to issue the writs, because of the

federal government’s exclusive control over immigration under the United States

Constitution, the authority delegated to him under the 287(g) Agreement, and under

the administrative warrants and immigration detainers issued against Petitioners.

See 8 U.S.C. § 1357(g)(10)(A)-(B).

 A. Mootness

 Petitioners initially argue the cases are moot, because the Sheriff has turned

Petitioners over to the physical custody of ICE. The Sheriff argues that even if the

cases are moot, the issues fall within an exception to the mootness doctrine.

 “Whenever, during the course of litigation it develops that the relief sought has

been granted or that the questions originally in controversy between the parties are

no longer at issue, the case should be dismissed [as moot.]” In re Peoples, 296 N.C.

109, 147, 250 S.E.2d 890, 912 (1978). “A case is ‘moot’ when a determination is sought

on a matter which, when rendered, cannot have any practical effect on the existing

controversy.” Roberts v. Madison Cty. Realtors Ass’n, 344 N.C. 394, 398-99, 474

S.E.2d 783, 787 (1996) (citation omitted).

 The issues in the case before us are justiciable where the question involves is

a “matter of public interest.” Matthews v. Dep’t of Transportation, 35 N.C. App. 768,

 - 10 -
 CHAVEZ V. CARMICHAEL

 Opinion of the Court

770, 242 S.E.2d 653, 654 (1978). “In such cases the courts have a duty to make a

determination.” Id. (citation omitted).

 Even if the Sheriff is not likely to be subject to further habeas petitions filed

by Chavez and Lopez or orders issued thereon, this matter involves an issue of federal

and state jurisdiction to invoke the “public interest” exception to mootness. Under

the “public interest” exception to mootness, an appellate court may consider a case,

even if technically moot, if it “involves a matter of public interest, is of general

importance, and deserves prompt resolution.” N.C. State Bar v. Randolph, 325 N.C.

699, 701, 386 S.E.2d 185, 186 (1989). Our appellate courts have previously applied

the “public interest” exception to otherwise moot cases of clear and far-reaching

significance, for members of the public beyond just the parties in the immediate case.

See, e.g., Granville Cty. Bd. of Comm’rs v. N.C. Hazardous Waste Mgmt. Comm’n, 329

N.C. 615, 623, 407 S.E.2d 785, 790 (1991) (applying the “public interest” exception to

review case involving location of hazardous waste facilities); In re Brooks, 143 N.C.

App. at 605-06, 548 S.E.2d at 751-52 (applying the “public interest” exception to police

officers’ challenge of a State Bureau of Investigation procedure for handling personnel

files containing “highly personal information” and recognizing that “the issues

presented . . . could have implications reaching far beyond the law enforcement

community”).

 - 11 -
 CHAVEZ V. CARMICHAEL

 Opinion of the Court

 Similar to the procedural posture of the Sheriff’s appeal, this Court applied

the “capable of repetition, but evading review” as well as the “public interest”

exception in State v. Corkum to review a defendant’s otherwise moot appeal, which

was before this Court on a writ of certiorari. State v. Corkum, 224 N.C. App. 129, 132,

735 S.E.2d 420, 423 (2012) (holding that an issue of felon’s confinement credit under

structured sentencing under the Justice Reinvestment Act of 2011 required review

because “all felons seeking confinement credit following revocation of post-release

supervision will face similar time constraints when appealing a denial of confinement

credit effectively preventing the issue regarding the trial judge’s discretion from being

resolved”).

 The Sheriff’s appeal presents significant issues of public interest because it

involves the question of whether our state courts possess jurisdiction to review habeas

petitions of alien detainees ostensibly held under the authority of the federal

government. This issue potentially impacts habeas petitions filed by suspected illegal

aliens held under 48-hour ICE detainers directed towards the Sheriff and the many

other court and local law enforcement officials across the state. The Sheriff’s filings

show that several other habeas petitions have been filed against him by ICE

detainees, including one that was filed and ruled upon after a writ of prohibition was

issued by this Court. Prompt resolution of this issue is essential because it is likely

 - 12 -
 CHAVEZ V. CARMICHAEL

 Opinion of the Court

other habeas petitions will be filed in our state courts, which impacts ICE’s ability to

enforce federal immigration law.

 Resolution of the Sheriff’s appeal potentially affects many other detainees,

local law enforcement agencies, ICE, and other court and public officers and

employees. For the reasons above and in the interest of the public, we review the

Sheriff’s appeal. See Randolph, 325 N.C. at 701, 386 S.E.2d at 186; Corkum, 224 N.C.

App. at 132, 735 S.E.2d at 423.

 B. Judicial Notice of 287(g) Agreement

 The Sheriff included the 287(g) Agreement between his office and ICE in the

record to this Court to support his arguments on appeal. Notwithstanding the

multiple prior rulings on this issue, Petitioners argue this Court should not consider

the 287(g) Agreement between the Sheriff and ICE in deciding the matter because

the 287(g) Agreement was not submitted to the superior court.

 As previously ruled upon by the superior court and this Court, the 287(g)

Agreement is properly in the record on appeal and bears upon the issue of whether

the superior court possessed subject matter jurisdiction to consider the petitions and

issue these writs of habeas corpus. An appellate court may also consider materials

that were not before the lower tribunal to determine whether subject matter

jurisdiction exists. See N.C. ex rel Utils. Comm’n. v. S. Bell Tel., 289 N.C. 286, 288,

 - 13 -
 CHAVEZ V. CARMICHAEL

 Opinion of the Court

221 S.E.2d 322, 323-24 (1976); N.C. Gen. Stat. § 8C-1, Rule 201(c) (2017) (“A court

may take judicial notice, whether requested or not”).

 The device of judicial notice is available to an appellate
 court as well as a trial court. This Court has recognized in
 the past that important public documents will be judicially
 noticed. Consideration of matters outside the record is
 especially appropriate where it would disclose that the
 question presented has become moot, or academic[.]

S. Bell, 289 N.C. at 288, 221 S.E.2d at 323-24 (internal quotation and citations

omitted).

 In Bell, the Supreme Court of North Carolina judicially noticed an order from

the Utilities Commission to assess whether an appeal by a telephone company was

moot. Id.; see also State ex rel. Comm’r of Ins. v. N.C. Auto. Rate Admin. Office, 293

N.C. 365, 381, 239 S.E.2d 48, 58 (1977) (taking judicial notice of the North Carolina

Rate Bureau’s filing with the Commissioner of Insurance).

 The 287(g) Agreement between the Sheriff and ICE is a controlling public

document. ICE maintains listings and links to all the current 287(g) agreements it

has entered into with local law enforcement entities across the United States on its

website, including the 28 February 2017 Agreement with the Sheriff. See U.S.

Immigration and Customs Enforcement, Delegation of Immigration Authority Section

287(g) Immigration and Nationality Act, https://www.ice.gov/287g (last visited Oct.

18, 2018).

 - 14 -
 CHAVEZ V. CARMICHAEL

 Opinion of the Court

 As part of the record on appeal and as verified above, we review the 287(g)

Agreement, as an applicable public document, for the purpose of considering the trial

court’s subject matter jurisdiction to rule upon Petitioners’ habeas petitions. See S.

Bell, 289 N.C. at 288, 221 S.E.2d at 323-24. Petitioners’ argument that we should not

consider the 287(g) Agreement because it was not presented to the superior court is

wholly without merit and is dismissed.

 C. Superior Court Lacked Subject-Matter Jurisdiction

 The Sheriff and Amicus assert the superior court lacked subject matter

jurisdiction to review Petitioners’ habeas petitions, issue writs of habeas corpus, and

order Petitioners’ release. The Sheriff’ argues the superior court “had no jurisdiction

to rule on immigration matters under the guise of using this state’s habeas corpus

statutes, because immigration matters are exclusively federal in nature.” Petitioners

respond and assert the superior court had jurisdiction to issue the writs of habeas

corpus because “the Sheriff and his deputies did not act under color of federal law.”

 “Subject matter jurisdiction refers to the power of the court to deal with the

kind of action in question[, and] . . . is conferred upon the courts by either the North

Carolina Constitution or by statute.” Harris v. Pembaur, 84 N.C. App. 666, 667, 353

S.E.2d 673, 675 (1987) (citation omitted). Whether subject matter jurisdiction exists

over a matter is firmly established:

 Subject matter jurisdiction cannot be conferred upon a
 court by consent, waiver or estoppel, and failure to demur

 - 15 -
 CHAVEZ V. CARMICHAEL

 Opinion of the Court

 or object to the jurisdiction is immaterial. The issue of
 subject matter jurisdiction may be considered by the court
 at any time, and may be raised for the first time on appeal.

In re T.B., 177 N.C. App. 790, 791, 629 S.E.2d 895, 896-97 (2006) (citations and

internal quotation marks omitted).

 “The standard of review for lack of subject matter jurisdiction is de novo.” Keith

v. Wallerich, 201 N.C. App. 550, 554, 687 S.E.2d 299, 302 (2009). “In determining

whether subject matter jurisdiction exists, a court may consider matters outside of

the pleadings.” Id.

 Before addressing the Sheriff’s argument, we initially address Petitioners’

contention that the superior court could exercise subject matter jurisdiction on these

matters. Petitioners argue “North Carolina law does not permit civil immigration

detention, even where there is a 287(g) agreement[.]”

 Pursuant to 8 U.S.C. § 1357(g)(1):

 [T]he Attorney General may enter into a written
 agreement with a State, or any political subdivision of a
 State, pursuant to which an officer . . . of the State . . ., who
 is determined by the Attorney General to be qualified to
 perform a function of an immigration officer in relation to
 the investigation, apprehension, or detention of aliens in
 the United States . . . may carry out such function at the
 expense of the State . . . to the extent consistent with State
 and local law. (emphasis supplied).

 - 16 -
 CHAVEZ V. CARMICHAEL

 Opinion of the Court

 The General Assembly of North Carolina expressly enacted statutory

authority for state and local law enforcement agencies and officials to enter into

287(g) agreements with federal agencies. The applicable statute states:

 Where authorized by federal law, any State or local law
 enforcement agency may authorize its law enforcement
 officers to also perform the functions of an officer under 8
 U.S.C. § 1357(g) if the agency has a Memorandum of
 Agreement or Memorandum of Understanding for that
 purpose with a federal agency. State and local law
 enforcement officers authorized under this provision are
 authorized to hold any office or position with the applicable
 federal agency required to perform the described functions.
 (emphasis supplied).

N.C. Gen. Stat. § 128-1.1(c1) (2017). 8 U.S.C. § 1357(g)(1) permits the Attorney

General to enter into agreements with local law enforcement officers to authorize

them to “perform a function of an immigration officer” to the extent consistent with

state law.

 Petitioners contend N.C. Gen. Stat. § 162-62 prevents local law enforcement

officers from performing the functions of immigration officers or to assist DHS in civil

immigration detentions. N.C. Gen. Stat. § 162-62 (2017) provides:

 (a) When any person charged with a felony or an impaired
 driving offense is confined for any period in a county jail
 . . . the administrator . . . shall attempt to determine if the
 prisoner is a legal resident of the United States by an
 inquiry of the prisoner, or by examination of any relevant
 documents, or both.

 (b) If the administrator . . . is unable to determine if that
 prisoner is a legal resident or citizen of the United States

 - 17 -
 CHAVEZ V. CARMICHAEL

 Opinion of the Court

 . . . the administrator . . . shall make a query of
 Immigration and Customs Enforcement of the United
 States Department of Homeland Security. If the prisoner
 has not been lawfully admitted to the United States, the
 United States Department of Homeland Security will have
 been notified of the prisoner’s status and confinement at
 the facility by its receipt of the query from the facility.

 (c) Nothing in this section shall be construed to deny bond
 to a prisoner or to prevent a prisoner from being released
 from confinement when that prisoner is otherwise eligible
 for release. (Emphasis supplied).

 Petitioners purport to characterize N.C. Gen. Stat. § 162-62(c) as forbidding

sheriffs from detaining prisoners who are subject to immigration detainers and

administrative warrants beyond the time they would otherwise be released from

custody or jail under state law. Petitioners’ assertion of the applicability of this

statute is incorrect.

 N.C. Gen. Stat. § 162-62 specifically refers to a sheriff’s duty to inquire into a

prisoner’s immigration status and, if that prisoner is within the country unlawfully,

mandates the sheriff “shall” notify DHS of the prisoner’s “status and confinement.”

Id. N.C. Gen. Stat. § 162-62 does not refer to a 287(g) agreement, federal immigration

detainer requests, administrative warrants or prevent a sheriff from performing

immigration functions pursuant to a 287(g) agreement, or under color of federal law.

See id.

 N.C. Gen. Stat. § 162-62(c) only provides that “[n]othing in this section shall be

construed . . . to prevent a prisoner from being released from confinement when that

 - 18 -
 CHAVEZ V. CARMICHAEL

 Opinion of the Court

prisoner is otherwise eligible for release.” (Emphasis supplied). This statute does not

mandate a prisoner must be released from confinement, only that nothing in that

specific section dealing with reporting a prisoner’s immigration status shall prevent

a prisoner from being released when they are “otherwise eligible.” Id.

 N.C. Gen. Stat. § 128-1.1 specifically authorizes state and local law

enforcement officers to enter into 287(g) agreements under 8 U.S.C. § 1357(g) and

perform the functions of immigration officers, including detention of aliens. No

conflict exists in the statutes between N.C. Gen. Stat. §§ 162-62 and 128-1.1.

 Even though Petitioners assert these two statutes are inconsistent, N.C. Gen.

Stat. § 128-1.1 controls over N.C. Gen. Stat. § 162-62, as the more specific statute.

“[W]here two statutory provisions conflict, one of which is specific or ‘particular’ and

the other ‘general,’ the more specific statute controls in resolving any apparent

conflict.” Furr v. Noland, 103 N.C. App. 279, 281, 404 S.E.2d 885, 886 (1991).

 N.C. Gen. Stat. § 128-1.1 specifically authorizes state and local law

enforcement agencies to enter into agreements with the federal government to

perform the functions of immigration officers under 8 U.S.C. § 1357(g), as present

here. The express language of 8 U.S.C. § 1357(g)(1) lists the “detention of aliens

within the United States” as one of the “function[s] of an immigration officer.”

 N.C. Gen. Stat. § 162-62 does not specifically regulate the conduct of sheriffs

acting as immigration officers pursuant to a 287(g) agreement under 8 U.S.C. §

 - 19 -
 CHAVEZ V. CARMICHAEL

 Opinion of the Court

1357(g), or under color of federal law. Instead, N.C. Gen. Stat. § 162-62 imposes a

specific and mandatory duty upon North Carolina sheriffs, as administrators of

county jails, to inquire, verify, and report a detained prisoner’s immigration status.

N.C. Gen. Stat. § 162-62.

 Contrary to Petitioners’ argument, North Carolina law does not forbid state

and local law enforcement officers from performing the functions of federal

immigration officers, but the policy of North Carolina as enacted by the General

Assembly, expressly authorizes sheriffs to enter into 287(g) agreements to permit

them to perform such functions. See N.C. Gen. Stat. § 128-1.1. We reject and overrule

their contention that “North Carolina law does not permit civil immigration

detention, even where there is a 287(g) agreement[.]”

 D. Federal Government’s Supreme and Exclusive Authority over Immigration

 The Sheriff contends the superior court did not possess subject matter

jurisdiction in these cases. We agree.

 The Supremacy Clause of the Constitution of the United States establishes

that the Constitution and laws of the United States “shall be the supreme Law of the

Land.” U.S. Const. art. VI, cl. 2. Nearly 200 years ago, the Supreme Court of the

United States held the Supremacy Clause prevents state and local officials from

taking actions or passing laws to “retard, impede, burden, or in any manner control”

 - 20 -
 CHAVEZ V. CARMICHAEL

 Opinion of the Court

the execution of federal law. McCulloch v. Maryland, 17 U.S. (4 Wheat.) 316, 436, 4

L. Ed. 579 (1819).

 “The Government of the United States has broad, undoubted power over the

subject of immigration and the status of aliens.” Arizona v. United States, 567 U.S.

387, 394, 183 L. Ed. 2d 351, 366 (2012). This broad authority derives from the federal

government’s delegated and enumerated constitutional power “[t]o establish an

uniform Rule of Naturalization[.]” U.S. Const. art. I, § 8, cl. 4. “Power to regulate

immigration is unquestionably exclusively a federal power.” DeCanas v. Bica, 424

U.S. 351, 354, 47 L. Ed. 2d 43 (1976), superseded by statute on other grounds as

recognized in Arizona, 567 U.S. at 404, 183 L. Ed. 2d at 372.

 The Sheriff cites several other states’ appellate court decisions, which hold

state courts lack jurisdiction to consider petitions for writs of habeas corpus and other

challenges to a detainee’s detention pursuant to the federal immigration authority.

See Ricketts v. Palm Beach County Sheriff, 985 So. 2d 591 (Fla. Dist. Ct. App. 2008);

State v. Chavez-Juarez, 185 Ohio App. 3d 189, 192, 923 N.E.2d 670, 673 (2009).

 In Ricketts, the Court of Appeals of Florida addressed a similar situation to the

instant case. Ricketts was arrested on a state criminal charge and detained by the

sheriff. Ricketts, 985 So. 2d at 591. His bond was set at $1,000; however, the sheriff

refused to accept the bond and release Ricketts, due to a federal immigration hold

issued by ICE. Id. As in the present case, Ricketts first sought habeas corpus relief

 - 21 -
 CHAVEZ V. CARMICHAEL

 Opinion of the Court

in state court. Id. at 592. The trial court denied all relief, reasoning that the issues

were within the exclusive jurisdiction of the federal government. Id.

 On appeal, the Court of Appeals of Florida agreed with the trial court “that

appellant cannot secure habeas corpus relief from the state court on the legality of

his federal detainer.” Id. The court reasoned that the constitutionality of his

detention pursuant to the immigration hold “is a question of law for the federal

courts.” Id. at 592-93. The court further explained that “a state court cannot

adjudicate the validity of the federal detainer, as the area of immigration and

naturalization is within the exclusive jurisdiction of the federal government.” Id. at

593 (citing Plyler v. Doe, 457 U.S. 202, 225, 72 L. Ed. 2d. 786, 804 (1982); and

DeCanas, 424 U.S. at 354, 47 L. Ed. 2d at 43 (“Power to regulate immigration is

unquestionably exclusively a federal power”)).

 The Court of Appeals of Ohio followed the Florida Court of Appeals’ decision in

Ricketts and reached a similar conclusion in Chavez-Juarez. Chavez was arrested for

operating a vehicle under the influence of alcohol. Chavez-Juarez, 185 Ohio App. at

at 193, 923 N.E.2d at 673. After arraignment, the state court ordered Chavez

released; however, he was held pursuant to a federal immigration detainer, was

turned over to ICE, and deported to Mexico. Id. at 193-94, 923 N.E.2d at 674. His

attorney filed a motion to have ICE officers held in contempt for violating the state

court’s release order. Id. at 194, 923 N.E.2d at 674.

 - 22 -
 CHAVEZ V. CARMICHAEL

 Opinion of the Court

 The trial court concluded that it lacked jurisdiction over ICE and denied the

contempt motion, because the federal courts have pre-emptive jurisdiction over

immigration issues. Id. at 199, 923 N.E.2d at 679. The Ohio Court of Appeals

recognized “Control over immigration and naturalization is entrusted exclusively to

the Federal Government, and a State has no power to interfere.” Id. (quoting Nyquist

v. Mauclet, 432 U.S. 1, 10, 53 L. Ed. 2d 63 (1977)).

 The Ohio Court of Appeals affirmed the trial court’s denial of the contempt

motion, and stated:

 Under federal regulation, the Clark County Sheriff’s Office
 was required to hold Chavez for 48 hours to allow ICE to
 assume custody. Chavez’s affidavit indicates that he was
 held in state custody for approximately 48 hours after the
 trial court released him on his own recognizance. If Chavez
 wished to challenge his detention, the proper avenue at
 that point would have been to file a petition in the federal
 courts, not an action in contempt with the state court,
 which did not have the power to adjudicate federal
 immigration issues.

Id. at 202, 923 N.E.2d at 680.

 We find the reasoning in both Ricketts and Chavez-Juarez persuasive and their

applications of federal immigration law to state proceedings to be correct.

 A state court’s purported exercise of jurisdiction to review the validity of

federal detainer requests and immigration warrants infringes upon the federal

government’s exclusive federal authority over immigration matters. See Plyler, 457

U.S. at 225, 72 L. Ed. 2d. at 804; DeCanas, 424 U.S. at 354, 47 L. Ed. 2d at 43. The

 - 23 -
 CHAVEZ V. CARMICHAEL

 Opinion of the Court

superior court did not possess subject matter jurisdiction, or any other basis, to

receive and review the merits of Petitioners’ habeas petitions, or issue orders other

than to dismiss for lack of jurisdiction, as it necessarily involved reviewing and ruling

on the legality of ICE’s immigration warrants and detainer requests.

 E. State Court Lacks Jurisdiction Even Without Formal Agreement

 Even if the express 287(g) Agreement between the Sheriff and ICE did not exist

or was invalid, federal law permits and empowers state and local authorities and

officers to “communicate with [ICE] regarding the immigration status of any

individual . . . or otherwise to cooperate with [ICE] in the identification,

apprehension, detention, or removal of aliens not lawfully present in the United

States” in the absence of a formal agreement. 8 U.S.C. § 1357(g)(10)(A)-(B) (emphasis

supplied).

 A state court’s purported exercise of jurisdiction to review petitions challenging

the validity of federal detainers and administrative warrants issued by ICE, and to

potentially order alien detainees released, constitutes prohibited interference with

the federal government’s supremacy and exclusive control over matters of

immigration. See U.S. Const. art. I, § 8, cl. 4; U.S. Const. art. VI, cl. 2.; Nyquist, 432

U.S. at 10, 53 L. Ed. 2d at 63; Plyler, 457 U.S. at 225, 72 L. Ed. 2d. at 804; DeCanas,

424 U.S. at 354, 47 L. Ed. 2d at 43.

 F. State Court Lacks Jurisdiction to Order Release of Federal Detainees

 - 24 -
 CHAVEZ V. CARMICHAEL

 Opinion of the Court

 An additional compelling reason that prohibits the superior court from

exercising jurisdiction to issue habeas writs to alien petitioners, is a state court’s

inability to grant habeas relief to individuals detained by federal officers acting under

federal authority.

 Nearly 160 years ago, the Supreme Court of the United States held in Ableman

v. Booth that “No state judge or court, after they are judicially informed that the party

is imprisoned under the authority of the United States, has any right to interfere

with him, or to require him to be brought before them.” Ableman v. Booth, 62 U.S. (21

How.) 506, 524, 6 L. Ed. 169, 176 (1859).

 The Supreme Court of the United States reaffirmed this principle in In re

Tarble, in which the Court stated:

 State judges and state courts, authorized by laws of their
 states to issue writs of habeas corpus, have, undoubtedly,
 a right to issue the writ in any case where a party is alleged
 to be illegally confined within their limits, unless it appear
 upon his application that he is confined under the
 authority, or claim and color of the authority, of the United
 States, by an officer of that government. If such fact appear
 upon the application, the writ should be refused.
 ...

 But, after the return is made, and the state judge or court
 judicially apprised that the party is in custody under the
 authority of the United States, they can proceed no further.
 They then know that the prisoner is within the dominion
 and jurisdiction of another government, and that neither
 the writ of habeas corpus nor any other process issued
 under state authority can pass over the line of division
 between the two sovereignties. He is then within the

 - 25 -
 CHAVEZ V. CARMICHAEL

 Opinion of the Court

 dominion and exclusive jurisdiction of the United States.
 If he has committed an offence against their laws, their
 tribunals alone can punish him. If he is wrongfully
 imprisoned, their judicial tribunals can release him and
 afford him redress.
 ...

 [T]hat the state judge or state court should proceed no
 further when it appears, from the application of the party,
 or the return made, that the prisoner is held by an officer of
 the United States under what, in truth, purports to be the
 authority of the United States; that is, an authority the
 validity of which is to be determined by the Constitution
 and laws of the United States. If a party thus held be
 illegally imprisoned, it is for the courts or judicial officers
 of the United States, and those courts or officers alone, to
 grant him release.

In re Tarble, 80 U.S. (13 Wall) 397, 409-11, 20 L. Ed. 597, 601-02 (1871) (emphasis

supplied) (citations omitted).

 In sum, if a prisoner’s habeas petition indicates the prisoner is held: (1) under

the authority, or color of authority, of the federal government; and, (2) by an officer

of the federal government under the asserted “authority of the United States”, the

state court must refuse to issue a writ of habeas corpus. See id.

 It is undisputed the Sheriff’s continued detention of Petitioners, after they

were otherwise released from state custody, was pursuant to the federal authority

delegated to his office under the 287(g) Agreement. Appendix B of the 287(g)

Agreement states, in relevant part:

 This Memorandum of Agreement (MOA) is between the
 U.S. Department of Homeland Security’s U.S. Immigration

 - 26 -
 CHAVEZ V. CARMICHAEL

 Opinion of the Court

 and Customs Enforcement (ICE) and the Law Enforcement
 [Mecklenburg County Sheriff’s Office] (MCSO), pursuant
 to which selected MCSO personnel are authorized to
 perform immigration enforcement duties in specific
 situations under Federal authority. (Emphasis supplied).

 Although the 287(g) Agreement was not attached to Petitioners’ habeas

petitions, the petitions indicated to the court the Sheriff was acting under color of

federal authority, if not actual federal authority. Petitioners’ petitions acknowledge

and specifically assert the Sheriff was purporting to act under the authority of the

United States by detaining them after they would have otherwise been released from

custody for their state criminal charges.

 Petitioners’ petitions both acknowledge and assert the Sheriff was detaining

them “at the behest of the federal government.” Petitioners’ habeas petitions refer to

the 287(g) Agreement. Copies of the Form I-200 immigration arrest warrant and

Form I-247A detainer request were attached to Chavez’s habeas petition submitted

to the superior court.

 A copy of the Form I-200 warrant was attached to Lopez’s habeas petition, and

the petition itself refers to the existence of the Form I-247A detainer, stating: “the

jail records, which have been viewed by counsel, indicate that there is an immigration

detainer lodged against [Lopez] pursuant to a Form I-247[.]”

 Additionally, 8 U.S.C. § 1357(g)(3) indicates state and local law enforcement

officers act under color of federal authority when performing immigration functions

 - 27 -
 CHAVEZ V. CARMICHAEL

 Opinion of the Court

authorized under a 287(g) agreement. The statute provides: “In performing a

function under this subsection [§ 1357(g)], an officer or employee of a State or political

subdivision of a State shall be subject to the direction and supervision of the Attorney

General [of the United States.]” 8 U.S.C. § 1357(g)(3) (emphasis supplied).

 The Sheriff was acting under the actual authority of the United States by

detaining Petitioners under the immigration enforcement authority delegated to him

under the 287(g) Agreement, and under color of federal authority provided by the

administrative warrants and Form I-247A detainer requests for Petitioners issued by

ICE. Petitioners’ own habeas petitions also indicate the Sheriff was acting under

color of federal authority for purposes of the prohibitions against interference by state

courts and state and local officials. See Tarble, 80 U.S. (13 Wall) at 409, 20 L. Ed. at

601.

 The next issue is whether the Sheriff was acting as a federal officer under the

287(g) Agreement by detaining Petitioners pursuant to the detainer requests and

administrative warrants. See id. After careful review of state and federal authorities,

no court has apparently decided the issue of whether a state or local law enforcement

officer is considered a federal officer when they are performing immigration functions

authorized under a 287(g) Agreement.

 In contexts other than immigration enforcement, several federal district courts

and United States courts of appeal for various circuits have held state and local law

 - 28 -
 CHAVEZ V. CARMICHAEL

 Opinion of the Court

enforcement officers are “federal officers” when they have been authorized or

deputized by federal law enforcement agencies, such as the Drug Enforcement

Agency, Federal Bureau of Investigation, and the United States Marshals Service.

United States v. Martin, 163 F. 3d 1212, 1214-15 (10th Cir. 1998) (holding that local

police officer deputized to participate in a FBI narcotics investigation is a federal

officer within the meaning of 18 U.S.C. § 115(a)(1)(B) [defining the crime of

threatening to murder a federal law enforcement officer]); United States v. Torres,

862 F.2d 1025, 1030 (3d Cir. 1988) (holding that local police officer deputized to

participate in a DEA investigation is a federal officer within the meaning of 18 U.S.C.

§ 111 [defining the crime of assault on a federal official]); United States v. Diamond,

53 F.3d 249, 251-52 (9th Cir. 1995) (holding that a state official specially deputized

as a U.S. Marshal was an officer of the United States even though he was not

technically a federal employee); DeMayo v. Nugent, 475 F. Supp. 2d 110, 115 (D. Mass.

2007) (“State police officers deputized as federal agents under the DEA constitute

federal agents acting under federal law”), rev’d on other grounds, 517 F. 3d 11 (1st

Cir. 2008).

 The United States Court of Appeals for the Fourth Circuit specifically

recognized an employee of the State of North Carolina as being a federal officer for

purposes of the assault on an federal officer statute, when the state employee was

assisting the Internal Revenue Service. United States v. Chunn, 347 F. 2d 717, 721

 - 29 -
 CHAVEZ V. CARMICHAEL

 Opinion of the Court

(4th Cir. 1965). The Fourth Circuit has also held that under a 287(g) Agreement,

local law enforcement officers effectively become federal officers of ICE, as they are

deputized to perform immigration-related enforcement functions. United States v.

Sosa-Carabantes, 561 F. 3d 256, 257 (4th Cir. 2009) (“The 287(g) Program permits

ICE to deputize local law enforcement officers to perform immigration enforcement

activities pursuant to a written agreement.” (citing 8 U.S.C. § 1357(g)(1))).

 The United States Court of Appeals for the Fifth Circuit recently stated,

“Under [287(g) agreements], state and local officials become de facto immigration

officers[.]” City of El Cenizo v. Texas, 890 F. 3d 164, 180 (5th Cir. 2018); see also People

ex rel. Norfleet v. Staton, 73 N.C. 546, 550 (1875) (“[T]here is no difference between

the acts of de facto and de jure officers so far as the public and third persons are

concerned”).

 To the extent personnel of the Sheriff’s office were deputized or empowered by

DHS or ICE to perform immigration functions, including detention and turnover of

physical custody, pursuant to the 287(g) Agreement, we find these federal cases

persuasive to conclude the Sheriff was empowered and acting as a federal officer by

detaining Petitioners under the detainer requests and administrative warrants. See

Martin, 163 F.3d at 1214-15; Torres, 862 F. 2d at 1030; Sosa-Carabantes, 561 F. 3d

at 257; El Cenizo, 890 F.3d at 180.

 - 30 -
 CHAVEZ V. CARMICHAEL

 Opinion of the Court

 Petitioners’ habeas petitions clearly disclosed Petitioners were being detained

under express, and color of, federal authority by the Sheriff, who was acting as a de

facto federal officer. See El Cenizo, 890 F. 3d at 180. Under the rule enunciated by

the Supreme Court of the United States in Ableman and expanded upon in Tarble,

the superior court was without jurisdiction, or any other basis, to receive, review, or

consider Petitioners’ habeas petitions, other than to dismiss for want of jurisdiction,

to hear or issue writs of habeas corpus, or intervene or interfere with Petitioner’s

detention in any capacity. Ableman, 62 U.S. (21 How.) at 524, 6 L. Ed. at 176; Tarble,

80 U.S. (13 Wall.) at 409. 20 L. Ed. at 607.

 The superior court should have dismissed Petitioners’ petitions for writs of

habeas corpus. See N.C. Gen. Stat. § 17-4(4) (2017) (“Application to prosecute the writ

[of habeas corpus] shall be denied . . . [w]here no probable ground for relief is shown

in the application.”). “When the record shows a lack of jurisdiction in the lower court,

the appropriate action on the part of the appellate court is to arrest judgment or

vacate any order entered without authority.” State v. Felmet, 302 N.C. 173, 176, 273

S.E.2d 708, 711 (1981). The orders of the superior court, which purported to order

the release of Petitioners, are vacated. Id.

 The proper jurisdiction and venues where Petitioners may file their habeas

petitions is in the appropriate federal tribunal. See 28 U.S.C. §2241(a); Tarble, 80

U.S. (13 Wall.) at 411, 20 L. Ed. at 602 (“If a party thus held be illegally imprisoned,

 - 31 -
 CHAVEZ V. CARMICHAEL

 Opinion of the Court

it is for the courts or judicial officers of the United States, and those courts or officers

alone, to grant him release”).

 IV. Conclusion

 The superior court lacked any legitimate basis and was without jurisdiction to

review, consider, or issue writs of habeas corpus for alien Petitioners not in state

custody and held under federal authority, or to issue any orders related thereon to

the Sheriff. State or local officials and employees purporting to intervene or act

constitutes a prohibited interference with the federal government’s supreme and

exclusive authority over the regulation of immigration and alienage. See U.S. Const.

art. I, § 8, cl. 4; Ableman, 62 U.S. (21 How.) at 524, 6 L. Ed. at 176; Tarble, 80 U.S. at

409. 20 L. Ed. at 607.

 The superior court was on notice the Petitioners were detained under the

express, and color of, exclusive federal authority. The Sheriff was acting as a federal

officer under the statutorily authorized and executed 287(g) Agreement. The orders

appealed from are vacated for lack of jurisdiction and remanded to the trial court

with instructions to dismiss Petitioners’ habeas petitions.

 A certified copy of this opinion and order shall be delivered to the Judicial

Standards Commission and to the Disciplinary Hearing Commission of the North

Carolina State Bar. It is so ordered.

 VACATED and REMANDED.

 - 32 -
 CHAVEZ V. CARMICHAEL

 Opinion of the Court

Judges DIETZ and BERGER concur.

 - 33 -